BARDON, Appellant, vs. HARTLEY and others, Respondents.

*October 18 — November 5, 1901.*

Contracts: *Specific performance; Title to land: Trusts ex* maleficio.

1. In an action to enforce specific performance of a contract under which plaintiff claimed an interest in land, findings of the trial court that no such contract as plaintiff sought to enforce was ever entered into by the parties, are *held* to be supported by the evidence.
2. No trust *ex maleficio* in favor of a person claiming an interest in land will be declared unless the *cestui que trust* has lost or surrendered some right, or omitted some act for his own protection, relying upon some promise of the trustee, by virtue whereof the latter has been enabled to acquire to himself the legal title, the enforcement of which would amount to a fraud upon the former.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, JR., Circuit Judge. *Affirmed.*

This is an action in equity for the purpose of obtaining a judgment decreeing the plaintiff to be the owner of an undivided one-half of 160 acres of valuable mining lands in the county of Iron, in this state, the title to which is now in the defendant *Billings.*

Prior to December 12, 1895, the record title to the lands in question was in one Emmeline E. Vaughn, and on that

day she contracted to sell the same to the defendant *Nelson* for $20,000, which sale was consummated by a deed February 24, 1896. *Nelson* immediately thereafter deeded the same to the defendant *Nelson Mining Company*, which in turn deeded the same to the defendant *Billings*. The plaintiff claims that he was the equitable owner of two thirds of said lands at the time of the making of the contract of sale to *Nelson*. It appears that the plaintiff then had a suit pending against Emmeline E. Vaughn to enforce his alleged equitable title, and he claims that some time in the fall of 1895 he made an oral agreement with the defendant *Hartley* to the effect that, if he (*Hartley*) would purchase Mrs. Vaughn's title, he (*Bardon*) would dismiss said action against Mrs. Vaughn, and transfer to *Hartley* an undivided one-sixth of the lands, and that they would then own the same in equal shares and would operate the mines thereon. He further claims that *Hartley* and *Nelson* fraudulently conspired together and caused the title to the lands to be taken in *Nelson* in fraud of the plaintiff's rights; that when *Nelson* purchased he (*Bardon*) dismissed his said action, as he had agreed, but that *Nelson* then fraudulently refused to recognize the plaintiff's rights and immediately conveyed the property to the *Nelson Mining Company*, but that both the *Nelson Mining Company* and the defendant *Billings* took title with notice of the plaintiff's rights. The defendants claimed that *Bardon* had no title to the lands; that *Nelson* purchased the same in good faith upon his own account, and was not charged with any duty arising out of the negotiations between *Hartley* and *Bardon*.

The court found that in October, 1874, Charles Fisher and Samuel S. Vaughn were copartners at Ashland, Wisconsin, and that they purchased the lands in question of the United States as such partners, and that the patent was issued in the name of Vaughn alone, and that Vaughn immediately executed a paper declaring that the land was

owned one third by himself, one third by Fisher, and one third by one Patrick Hickey, but that it did not appear that Hickey ever received said paper or became a party thereto; that the partnership between Fisher and Vaughn was dissolved June 24, 1875, and a final settlement of the firm affairs had, and that Fisher conveyed his interest in the said lands to Vaughn, who paid and redeemed the taxes on the same until his death in January, 1886, leaving Emmeline E: Vaughn his widow and sole heir at law; that in November, 1886, Fisher commenced an action against Mrs. Vaughn, claiming to be the owner of a two-thirds interest in said lands, having purchased Hickey's one-third; that said action was thereafter tried and went to judgment in the circuit court for Ashland county, and came to this court by appeal, and finally resulted in a final judgment dismissing the plaintiff's complaint upon the merits (*Fisher v. Vaughn*, 75 Wis. 609); that the plaintiff had full knowledge of the proceedings in said action, and assisted Fisher therein by advancing him money, and knew of the final decision, but nevertheless after such final decision he obtained from Fisher a conveyance of his pretended title to an undivided two-thirds of said lands; that thereafter the plaintiff commenced an action against Emmeline E. Vaughn, claiming to recover an undivided two-thirds of said lands, and the said Emmeline E. Vaughn appeared in said action and set up the former adjudication as a bar; that Emmeline E. Vaughn never recognized that either Fisher or *Hartley* or the plaintiff had any interests, legal or equitable, in said lands; that

"some time during the summer or fall of 1895 (the evidence does not show more approximately when), and while the said suit of the plaintiff against Emmeline E. Vaughn, last mentioned, was pending, the plaintiff herein, after explaining fully to the defendant *Charles H. Hartley* his claim of title to said lands, proposed orally to said *Hartley* that if he (*Hartley*) would purchase and pay for Mrs. Vaughn's

title, and, when he got it, concede the plaintiff's title to two thirds, he would give said *Hartley* one fourth of this two-thirds, or one sixth of the whole, and they would own the property as tenants in common, and then do something with the property,— sell royalties or operate the mine,— and share equally; but the said *Hartley* had no means wherewith to purchase said lands from Mrs. Vaughn, and did not accept the said proposition made by the plaintiff, but told the plaintiff that, if he could raise the money to purchase said lands from Mrs. Vaughn, he would be willing to accept said proposition. This is the nearest approach to a contract that the evidence shows between the plaintiff and said *Hartley*. There never was any written agreement whatever, nor any complete oral agreement, concerning said land, or concerning any partnership between them, and the allegations of the complaint in regard to copartnership and an agreement between the said plaintiff and said *Hartley* are untrue."

The court further found that the said Emmeline E. Vaughn was not connected with the negotiations between the plaintiff and *Hartley*, or consulted with regard to the same; that December 12, 1895, she entered into a written contract of sale of the lands to the defendant *Nelson* for the sum of $20,000, which contract was expressly made subject to the claim of title made by said *Bardon*, and that the said Emmeline E. Vaughn did not then or at any time agree with *Bardon*, *Hartley*, and *Nelson*, or either of them, that the suit of *Bardon* against her should be dismissed; that *Nelson* before purchasing said lands was advised that the plaintiff had no legal or equitable title to any interest therein, and on that advice he made said purchase, with knowledge of the plaintiff's claim and subject thereto, and made said purchase solely in his own interest, and that *Hartley* was not directly or indirectly a party thereto; that before such purchase *Nelson* informed *Hartley* that he (*Nelson*) would have nothing to do with the proposition made by *Bardon* to *Hartley*, and that *Nelson* has never at any time recognized any right or interest of the plaintiff or of said *Hartley* in said lands; that the said Emmeline E. Vaughn deeded said lands Feb-

ruary 24, 1896, to *Nelson*, who deeded the same February 27, 1896, to the *Nelson Mining Company*, which company deeded the same July 26, 1896, to the defendant *Frank Billings*, and that all of said conveyances were made in good faith and for a valuable consideration, and subject to the claim of the plaintiff; that on the 22d day of April, 1896, the attorney for the plaintiff in his suit against Mrs. Vaughn prepared and signed a notice dismissing said suit, but that the evidence does not show when the same was served upon the attorneys of Mrs. Vaughn; that the plaintiff did not begin his suit against Mrs. Vaughn believing that he could maintain a claim of title to two thirds of the lands, but thought that there was some equity in his claim, and that by asserting the same he might obtain something by way of settlement; that *Nelson* had full information as to the negotiations between *Bardon* and *Hartley* relative to said lands; that immediately after *Nelson's* purchase, and on the same day, the plaintiff was fully informed of said purchase and that *Nelson* claimed said lands as his own and did not recognize that *Hartley* had any interest therein, and that the plaintiff did not discontinue his suit against Mrs. Vaughn until four months after that time; that *Hartley* led plaintiff to believe that he had some arrangement with *Nelson* by which *Nelson* was to furnish *Hartley* with money to buy Mrs. Vaughn's title, and that he (*Hartley*) hoped that, after getting the title, *Nelson* would make some settlement with the plaintiff that would satisfy him; that at the time of the sale of the lands they were of uncertain value, although the plaintiff and *Hartley* considered them of greater value than the price paid by *Nelson*, but that Mrs. Vaughn and her attorney considered that the same was a fair price; that Mrs. Vaughn never settled plaintiff's suit against her, nor recognized his claim, but claimed the whole title herself, and sold the whole title to *Nelson* for what she considered it worth; that *Hartley* was unable to raise the money to

buy said lands from Mrs. Vaughn, but allowed *Nelson* to do so, and that *Nelson* bought with his own money, and acquired all of Mrs. Vaughn's title, subject to the plaintiff's claim, and that *Hartley* never acquired the Vaughn title, nor any right to it; that the plaintiff's position was not changed in any way by the sale to *Nelson;* that he parted with nothing by reason of *Nelson's* purchase; that he had the same claim against *Nelson* that he had against Mrs. Vaughn; that his suit against Mrs. Vaughn was still pending; that the defendant *Nelson* had full notice of it, and purchased subject to it, and the plaintiff was under no obligation to anybody to dismiss said suit, and that his subsequent dismissal of it was not in pursuance of any agreement on his part to do it.

As to the counterclaim made by the defendant *Billings*, the court found that *Billings* was the owner in fee of the lands in question, and that the plaintiff has and does set up a claim to an undivided two-thirds of said lands, which claim is unlawful and inequitable.

Upon these findings of fact the court concluded that the plaintiff had no right, title, or interest of any kind in said lands, and that the defendant *Frank Billings* was the legal and equitable owner thereof; that the defendants were entitled to judgment dismissing the complaint, with costs, and that the defendant *Billings* was entitled to judgment upon his counterclaim, adjudging him to be the owner in fee of said lands, and that the plaintiff release to him all claim to said lands. Judgment was entered in accordance with these findings, and the plaintiff appeals.

For the appellant there was a brief by *O'Connor, Schmitz & Wild,* and oral argument by *Rufus B. Smith.*

For the respondents there was a brief by *Cate, Lamoreux & Park,* and oral argument by *B. B. Park.*

WINSLOW, J. We have carefully examined the evidence, and are satisfied that the findings are fully supported thereby,

and hence the question for decision is simply whether the judgment is supported by the findings. This question also must be answered in the affirmative. The court having found that no complete contract, either oral or written, was ever entered into between *Bardon* and *Hartley* with reference to the purchase of the lands, there can, of course, be no decree for specific performance. The court will not make a contract for the parties.

The only other ground upon which the plaintiff can claim relief is upon the ground that there has arisen a trust *ex maleficio* in his favor in the lands. *Cutler v. Babcock*, 81 Wis. 195. The ground upon which such trusts have been recognized and enforced is that the *cestui que trust*, relying upon some promise of the fraudulent trustee, has surrendered a right, or omitted some act for his own protection, by virtue whereof the fraudulent trustee has been enabled to acquire to himself the legal title, the enforcement of which legal title would amount to a fraud upon the *cestui que trust*. No such case is presented here. The appellant has neither lost nor surrendered any right in reliance upon any promise on the part of either *Hartley* or *Nelson*. He did not even discontinue his action until several months after *Nelson's* purchase, and after he knew that *Nelson* refused to recognize that he had any rights in the property. His rights in the property, if he had any, were just as valid and enforceable after *Nelson's* purchase as before.

*By the Court.*— Judgment affirmed.