ADOPTION OF BEARBY: PUGH, Appellant, vs. COX, by guard-
ian *ad litem,* and another, Respondents.

*October 14—November 11, 1924.*

*Adoption: Statutory prerequisites to jurisdiction: Petition of mar-
ried man not joined in by wife: Collateral attack by heirs of
adoptive parent.*

1. Adoption proceedings are statutory, and the statutory pre-
requisites of jurisdiction must exist to authorize the court to
act.   p. 34.
2. A petition for adoption which disclosed that petitioner was a
married man and that his wife did not join therein did not
give the court jurisdiction, in view of sec. 4021, Stats., not-
withstanding a statement that petitioner's wife was incompe-
tent and for such reason could not join in the petition.   p. 35.
3. The heirs of the adoptive parents have no better standing in
a court of equity to attack adoption proceedings than their
ancestors would have had.   p. 36.

APPEAL from an order of the county court of Racine
county: WALTER C. PALMER, Judge. *Affirmed.*

This is an application by the brother of Arthur O. Pugh,
deceased, for an order setting aside and vacating an order
entered in adoption proceedings in the county court of Ra-
cine county June 23, 1906, by which one Grace M. Bearby,

an infant, was declared to be the adopted child of Arthur. O. Pugh and Rose Pugh, his wife, and changing her name to Grace M. Pugh. The county court denied the application, from which order the petitioner brings this appeal.

For the appellant there was a brief by *Whaley & Erikson,* and oral argument by *Martin R. Paulson* and *C. C. Erikson,* all of Racine.

For the respondent *Cox* there was a brief by *Lewis J. Quinn,* guardian *ad litem,* and *Hand & Quinn,* of counsel, all of Racine, and oral argument by *Lewis J. Quinn.*

OWEN, J.    The petitioner, a brother of Arthur O. Pugh, deceased, filed his petition in the county court of Racine county praying for an order vacating the order of adoption to the end that his rights as an heir at law to the estate of Arthur O. Pugh might not be prejudiced by reason of the said order of adoption.    The petition signed by Arthur O. Pugh for the adoption of Grace M. Bearby set forth that "Rose Pugh is and has been for many years last past his lawfully wedded wife.    That said wife is and has been for about the last year an incompetent person and for that reason cannot join in this petition."    The petition was signed by Arthur O. Pugh, but was not signed by his wife.

Sec. 4021, Stats., in 1906, as now, provided that any inhabitant of this state may petition the county court in the county of his residence for leave to adopt a child not his own by birth.    It further provided, however, that "no such petition made by a married person shall be granted unless the husband or wife of the petitioner shall join therein, excepting that when such petitioner shall be married to the natural father or mother of such child then such joinder by such father or mother shall be deemed unnecessary."    The petition of Arthur O. Pugh disclosed on its face that he was a married man and that his wife did not join in the petition for adoption.

Adoption proceedings are statutory, and it is fundamental

that the statutory prerequisites of jurisdiction must exist in order to authorize the court to act. The first step necessary to arouse the jurisdiction of the county court is a petition conforming to the statutory requirements. The statute definitely provides that if the petition is made by a married man no order of adoption shall be entered unless the wife of the married man join in the petition. While there is an increasing disposition on the part of courts to place fair and reasonable construction upon statutes and proceedings relating to the adoption of children so that mere irregularities of procedure may not defeat the beneficent purposes of the institution of adoption, plain jurisdictional requirements must be observed. It cannot be assumed that the deliberate legislative requirement that husband *and* wife shall join in a petition for adoption was without any purpose. Indeed, the public policy embodied in such a requirement is readily appreciated. It is to guarantee harmony on the part of the adoptive parents upon the question of the adoption and to assure a welcome and affectionate reception of the child into its adopted home.

It is said that the statute should not be construed as requiring the wife to join where, as here, she is incompetent. The statute specifically provides for an exception, that exception being where the wife or husband of the adoptive parent is the natural parent of the adoptive child. This makes it rather plain that the statute intended no other exceptions. In fact, it may well be doubted whether the legislature would authorize an adoption that would take the child into a home where one of the adoptive parents was incompetent, and especially if that be the mother. We can find no reasonable ground for giving the statute the construction urged, and it must be held that the adoption petition gave the court no jurisdiction to act upon the matter.

While we have no difficulty in arriving at the conclusion that the county court was without jurisdiction to enter the order of adoption, we must hold that the petitioner is in no

position to ask a court of equity to vacate that order. The books are full of cases in which adoption proceedings have been attacked in one way or another. It is rather deplorable, however, to note that such attacks seldom come from the immediate parties to the proceedings, but are generally made by the heirs of the adoptive parents after they are dead. Such an attack was made by one of the adoptive parents in *Parsons v. Parsons,* 101 Wis. 76, 77 N. W. 147, and although it was there determined that the adoption proceedings were valid, the court said:

"So a conclusion is reached, on the merits of the case, that the decision of the circuit court was right and must be affirmed. But if we were to go further, the result would not be otherwise. The proceedings to avoid the judgment of adoption are clearly of an equitable nature, and after the lapse of many years, during which time the status of the subject of adoption has been recognized as legally fixed by the judgment of the county court, by all parties to the proceedings, one of those parties on whose motion the judgment was rendered is in no position to appeal to the equity powers of the court to declare it void. The plainest principles of estoppel apply to the situation. Appellant petitioned for the judgment. It was entered on her motion. The person most interested, the child, was a ward of the court, and its status for life was entirely and irrevocably changed by the result of the proceedings if they were valid. Their validity was recognized by the appellant till she became pecuniarily interested in changing her position. Clearly, she cannot be aided by a court of equity to do that to the injury of the person she was instrumental in locating in her family as her adopted son."

The heirs of the adoptive parents have no better standing in a court of equity to attack the adoption proceedings than their ancestors would have had. *Appeal of Wolf,* 10 Sadler (Pa.) 139, 13 Atl. 760; *Milligan v. McLaughlin,* 94 Neb. 171, 142 N. W. 675, 46 L. R. A. N. s. 1134; *Estate of McKeag,* 141 Cal. 403, 74 Pac. 1039; *In re Evans,* 106 Cal.

562, 565, 39 Pac. 860. See, also, note in 16 A. L. R. 1020. While the order of adoption is void and probably is not efficient to vest the adopted child with any interest in the estate of the adoptive father (*Estate of McCormick*, 108 Wis. 234, 84 N. W. 148), a court of equity will not lend its assistance to those whose only interest in attacking the adoption proceedings, in the language of the California court, "is to defeat the relations which the adoptive parents always recognized and never questioned, so that they may succeed to an estate from which, by the very fact of adoption, the adoptive parents intended they should be excluded in favor of the adopted child." *Estate of McKeag*, 141 Cal. 403, 74 Pac. 1039. He who implores the aid of a court of equity must come with a plea sounding in better morals and appealing more to conscience than does that of this petitioner. The application was properly denied.

*By the Court.*—Order affirmed.