WILL OF JAEGER: LEUTZ, personally and as Special Administratrix, and others, Appellants, vs. LADEMAN, Trustee, Respondent.

*March 5—April 2, 1935.*

4

For the appellants there were briefs by *Carl H. Juergens,* and oral argument by *Mr. Juergens* and *Mr. Erwin E. Fritz,* all of Milwaukee.

For the appellant minors there was a brief by *William W. Apter,* guardian *ad litem,* and *E. W. Van Dyke* of counsel, both of. Milwaukee.

For the respondent there was a brief by *J. R. Jones,* attorney for the American Legion and the Disabled American Veterans, *Leon J. Dealy,* attorney for Veterans of Foreign Wars and Allied Council, and *Ferris & Ferris,* attorneys for Central Council of Relief and Hospital Welfare, all of Milwaukee, and oral argument by *Mr. Jones, Mr. Dealy, Mr. John E. Ferris,* and *Mr. John E. Ferris, Jr.*

ROSENBERRY, C. J.    The question presented is whether or not the trust created under the will by its terms terminated on the 24th day of April, 1934.   The American Legion, the Disabled American Veterans, the Veterans of Foreign Wars, the Allied Council, and the Central Council of Relief and Hospital Welfare appeared and contended that the trust had not failed, for the reason that Joseph U. Lademan had neglected to perform his duties under the will and in accordance with the direction thereof, in that he had failed to set up a trust fund, and that he had failed to request the mayor of the city of Milwaukee to appoint a committee to carry out the directions of a charitable bequest.

There is not much dispute as to what was done.   Mr. Lademan testified that he called at the office of the mayor in August, 1925, told him about the will and the provisions thereof, and that he was supposed to appoint a committee of five; that Mr. G. L. Weigle and himself were supposed to be two of them; that the mayor promised to take it under consideration; and that nothing further was done.   It appears that the mayor of Milwaukee addressed a letter to Mr. Lademan on May 8, 1925, in which he said, among other things:

"It has been called to my attention that in paragraph twenty-three thereof I am to name some committee to formu-

late a plan to administer part of his estate for the benefit of disabled soldiers. I am also informed that unless such an organization is created and effected within ten years, it is void. Up to this time I have not heard officially with respect thereto and therefore am writing this letter of inquiry." ·

In reply to this Mr. Lademan wrote on May 11, 1925:

"Your letter of the 8th is received and in regard to this matter will say that we are just settling the bequests mentioned in the Carl Jaeger will and within ten days or two weeks will be in position to confer with you as to the fund mentioned."

There is nothing in the evidence from which it can be inferred that either the trustee, the mayor of the city of Milwaukee, or anyone else connected with the transaction acted otherwise than in good faith. That based upon conditions existing in Milwaukee at the time Mr. Lemke, who was a very able and conscientious lawyer (now deceased), was doubtful as to whether or not, in view of the comparatively small size of the residuary estate, any desirable result could be obtained by the formation of a "legal organization." Nevertheless, the matter was called to the attention of the mayor, and there the matter rested, as has already been indicated. Under the twenty-third paragraph, Was it the duty of the trustee to cause a legal organization to be formed or to do more than he did do?

The will directs the setting up of a trust fund, and then provides:

"And to create such an organization my said executor shall request the mayor of the city of Milwaukee to appoint a committee composed of five citizens of Milwaukee, of which Mr. G. L. Weigle and my said executor shall be named as two such members. Such committee shall devise and formulate a plan to create an organization, if possible, with the assistance of funds contributed or donated by other persons and societies, to carry out the aims, objects and purposes as set forth in this paragraph."

It is first contended that the trustee was guilty of a breach of duty in that there was a failure to set up a trust fund. It is considered that, when the county court of Milwaukee county assigned the residue of the estate to Mr. Lademan as trustee in trust "according to paragraph 'twenty-three' of the last will and testament of said decedent," a fund was created. The mere fact that in accounting and in other respects it was not described by its full title, The Carl and Louise Jaeger Trust Fund for Disabled Milwaukee Soldiers, did not affect the essential character of the trust created under the decree of the county court. Mr. Lademan was guilty of no failure of duty in respect to carrying out that provision of the will.

It appears without contradiction that, for the purpose of having an organization created which should hold and administer the fund in accordance with the terms of the will, Mr. Lademan called upon the mayor, brought the matter to his attention and informed him of the contents of the will. Using language in its ordinary sense, we are unable to see why this is not a compliance with the terms of the will. When Mr. Lademan requested the mayor to appoint a committee under the terms of the will, the initiative then passed to the mayor.

It is quite probable that in this case, as in a good many other cases, the matter viewed in retrospect appears differently in 1935 than when it was considered by the trustee, his counsel, and the mayor in 1925. Mr. Lademan was of the view that, unless other funds could be raised, the residue of the estate would be largely depleted in order to carry out the trust. It is quite apparent, unless the time was propitious and there was some one to push the matter vigorously, the expectations of the testator could not be realized.

The trial court in glowing terms acquits the trustee, the mayor, counsel for the trustee, and every one connected with the transaction of bad faith, and finds that they believed they were acting in accordance with the wishes of the testator as

they understood them and for the best interest of all concerned. It is considered that the fact that the trustee did not himself proceed more vigorously after requesting the mayor to act under the will does not operate to extend the time within which the limitation prescribed in the will takes effect. It is apparent from the terms of the will itself that the testator must have had a substantial doubt as to whether or not such a committee as was provided for in the will would proceed under the will, otherwise he would not have prescribed a ten-year limitation and provided for the disposition of his estate to the contingent legatees.

Another matter is presented for consideration which it is thought best to treat in connection with the disposition of the case itself. On April 27, 1934, the county court appointed Joseph J. O'Day, Esq., as guardian *ad litem* of Elaine Hontros, James Hontros, Le Roy Kelling and Lucille Kelling, minors, who have an interest as contingent legatees in the residuary estate. The guardian *ad litem* appeared, and after some testimony had been taken and at a hearing held on June 28, 1934, the court requested the guardian *ad litem* to state his position. The guardian *ad litem* then stated that he would have to take the position that not even a feeble effort had been made to carry out the trust, even though it was to the detriment of the minors he represented. He further stated that a claim was made that the trust was impracticable of establishment, but he saw nothing impractical about it. The question was then raised as to whether Mr. O'Day should continue to represent the minors as guardian *ad litem,* whereupon the guardian *ad litem* said that he did not consider it his duty as such to do anything that was improper or illegal. The court then stated that a guardian *ad litem* was appointed to assist the court; that, if the guardian *ad litem* was of the opinion that his wards had no interest, it was his duty to so advise the court; that, if a guardian *ad litem* should stand up and fight for his wards even if he knew they had no standing, the court would never give him another

appointment. At the close of the hearing in which the guardian *ad litem* participated, the decree of the county court was entered by which the prayer of the trustee to have the trust terminated was denied and the trust continued for an additional period of ten years. Thereupon Ludmilla Leutz appealed from the decree on her own behalf and as special administratrix of the estate of Marie Holzhaeuser, deceased, and as guardian of Elaine Hontros and James Hontros. No appeal seems to have been taken on behalf of the minors, Le Roy Kelling and Lucille Kelling, unless their interest is represented by the appeal of Hugo W. Kelling, as administrator of the estate of John Kelling, deceased. The appellants were represented in the court below as well as here by Carl H. Juergens, Esq. The case and brief were prepared by appellants' attorney. The guardian *ad litem* as such filed a brief in this court in which he contended: First, that the failure of the executor to execute the twenty-third paragraph of the will resulted in a constructive trust in favor of the disabled veterans of the World War; second, that the county court of Milwaukee county was vested with jurisdiction to establish and enforce the constructive trust; third, upon the expiration of the original ten-year period a cause of action as for a constructive trust accrued in favor of the soldier beneficiaries. The brief of the guardian *ad litem* concludes:

"It is therefore submitted that the case at bar does not present a question of varying the terms of a will, but of recovering trust funds, lost to a beneficiary, by reason of the misfeasance of a trustee; that, independently of the express trust created by the will in favor of disabled veterans, such misfeasance of the trustee gave rise to a constructive trust, and that, upon discovery of such misfeasance, arising out of a misconception, on the part of the trustee, of his duties, the beneficiaries were entitled to trace and recover the original trust fund."

So the record stood at the time the matter was brought on for argument in this court. This court was of the view upon the argument that the minor contingent legatees were unrep-

resented by counsel, for the reason that the guardian *ad litem* had taken a position adverse to their interest. Thereupon the court of its own motion struck the brief of the guardian *ad litem* and appointed William W. Apter, Esq., who had represented some of the minors in county court proceedings, guardian *ad litem* for the minors, and directed him to file a brief. A brief has been filed in compliance with the court's direction. The guardian *ad litem,* O'Day, considering himself aggrieved by the action taken by the court, brought the matter to the attention of the executive committee of the Milwaukee Bar Association, and Benjamin Poss, Esq., of the Milwaukee bar, asked and received permission of the court to present Mr. O'Day's position to the court. Mr. Poss has filed a brief in which it is suggested that the court, instead of subjecting Mr. O'Day to the stigma of having his brief as guardian *ad litem* stricken, should have appointed another guardian *ad litem* if such were available and permitted Mr. O'Day's brief to stand. A determination of whether or not the court was in error in striking Mr. O'Day's brief requires a consideration of what duty a guardian *ad litem* owes to the minors whom he represents.

Under the laws of this state, when a minor is a party, he must appear by a guardian *ad litem* to be appointed by the court or a judge. The duties of a guardian *ad litem* are not prescribed by statute. When an infant appears as a party to an action pending before a court, he becomes a ward of the court, and it is the duty of the court to see that the interest of its ward is protected. *Tyson v. Tyson,* 94 Wis. 225, 68 N. W. 1015. And so in most jurisdictions, either by rule of court or by statute, upon such a situation being brought to the attention of the court, a member of the bar is appointed guardian *ad litem* to discharge the duty which the court owes to the infant defendant. It is the duty of the court not only to appoint a guardian *ad litem,* but it has the further duty of seeing that the guardian *ad litem* performs his duties and

protects the interest of the ward of the court. While the guardian *ad litem* is at all times under the control of and subject to the orders of the court, the immediate responsibility for protecting the infant's interest devolves upon the guardian *ad litem.* If he neglect or fail in his duty in that regard, he is answerable in damages for negligence. *Tyson v. Tyson, supra.* While the appointment of a guardian *ad litem* is not jurisdictional in the sense that failure to appoint deprives the court of power to act, a judgment affecting the interest of an infant not represented by guardian *ad litem* is erroneous. *Estate of Thompson,* 212 Wis. 172, 248 N. W. 167.

In the brief submitted on behalf of the guardian *ad litem* in this matter, it is urged that, where the duty of an attorney to his client conflicts with his duty to the court, the duty of the court is the higher duty, and the performance of that duty excuses the performance of the duty which is owing to the client. *State v. Barto,* 202 Wis. 329, 232 N. W. 553. That is probably a correct statement of the law, but it does not solve the question presented upon this record. Having accepted the appointment as guardian *ad litem* in this case, Mr. O'Day, after hearing evidence and examining the law, was of the opinion that the contingent legatees had no interest under the facts and the law, and he so reported to the court which appointed him, a proper and highly commendable procedure. If the guardian *ad litem* could not represent the interest of the infants, he should, in addition to reporting to the court as he did, have asked the court to relieve him, and the court should have appointed some one who could faithfully and energetically represent the interest of the minors. The trial court was in error in directing Mr. O'Day to continue to act as guardian *ad litem* when his convictions were such that he could represent only the interest of those opposed to the infants. No attorney is required by his duty as guardian *ad litem* or as counsel to stultify himself. When he finds that he cannot conscientiously continue, he should so

report to the court and ask to be relieved in the case of a guardian *ad litem* or inform his client if he is acting as counsel.

We are unable to reconcile the doctrine of *Tyson v. Tyson, supra,* with the determination made by the trial court in this matter. Of course, there may be cases where the facts and the law are such as to admit of no controversy as to the rights of parties. Certainly, this is not one of those cases. Mr. O'Day urges matters upon the attention of the court which were not brought to the attention of the court in briefs of counsel of the various organizations of the World War veterans. In view of the circumstances of this case, it is considered that the brief of Mr. O'Day should be received as if filed by him as a friend of the court. It is considered, however, that the court was not in error in striking his brief as guardian *ad litem,* because it did not present the case of the infant parties and left them unrepresented in fact, although represented in form. It is considered that Mr. O'Day did what an honorable attorney and a gentleman should do when presenting the matter to the court. This court considered, and upon reconsideration it adheres to the view, that it was its duty to see that the interests of the infants were properly represented by counsel in this court, and that it would have failed in the duty which all courts owe to infant parties had it permitted the situation to remain as it was on the record here.

The duties of a guardian *ad litem* are considered and cases cited in *Spotts v. Spotts,* 331 Mo. 917, 55 S. W. (2d) 977, 87 A. L. R. 660, beginning at page 670. If the record had been permitted to stand as it was, and so disclose that the guardian *ad litem* who represented the infants in fact appeared here as in the trial court opposed to the interest of the minors, the record would have disclosed a defect which the court would have been obliged to remedy upon proper proceedings for that purpose.

We should perhaps at this point consider the matters urged upon our attention in Mr. O'Day's brief. Mr. O'Day argues that, upon the expiration of the original ten-year period fixed by the will for the establishment of the express trust, a cause of action as for a constructive trust immediately accrued to the soldier beneficiaries and because of a breach of duty by the trustee. He further urged that an action in that behalf is not barred by the statute. Mr. O'Day cites no case to our attention where it has ever been held that a testamentary trust which failed under the terms of the will creating it was held to vest a cause of action in beneficiaries on the ground that by the failure a constructive trust was created in place of the express trust provided for in the will. We search the record in vain in this case for any evidence which tends to show that anyone by reason of any fraud, breach of duty, or misconduct now holds property which otherwise would belong to some one else. It is considered that under the established principles of law a constructive trust does not arise in the absence of fraud positive or constructive. *Bardon v. Hartley,* 112 Wis. 74, 87 N. W. 809; *Streeter v. Gamble,* 298 Ill. 332, 131 N. E. 589, 23 A. L. R. 485, at p. 489.

Not only is no fraud shown, but the trial court acquitted every person concerned with the performance of any duty under the will of Carl Jaeger of anything approaching misconduct of any kind, but held that under the will the executor was charged with an affirmative duty of seeing that the corporation was organized. In so holding it is considered that the trial court was in error. If the trustee had been guilty of misconduct, his misconduct could scarcely have been charged to the contingent legatees. The trustee in this case claims no benefit and received no benefit from the fact that the corporation was not organized within the ten-year period. He held the residuary estate in trust for the contingent legatees as well as for the legal organization to be formed. He had no personal interest in the residuary estate. Therefore we see

no basis upon which it can even be argued that the testamentary trust has been succeeded by a constructive trust. The trust, having by the terms of the will terminated, the residuary estate should have been distributed to the contingent legatees.

The situation in which the guardian *ad litem* finds himself arose from a mistake of law on the part of the court in which apparently the guardian *ad litem* shared. Neither in the argument of the case here nor at any time has it been considered that the guardian *ad litem* was guilty of any intentional breach of duty, but that the entire situation arose from a misconception of the law, as already indicated.

*By the Court.*—The order and decree appealed from is reversed, and cause remanded with directions to enter an order terminating the trust, distributing the residuary estate, and discharging the trustee in accordance with the prayer of the trustee's petition.