In re Adoption of Morrison: Jones, by Guardian *ad litem,* Appellant, vs. Manesewitz and wife, Respondents.*

*October 11—November 6, 1951.*

\*Motion for rehearing denied, with $25 costs, on February 5, 1952.

54

56

For the appellant there were briefs by *A. M. Frederickson* of Milwaukee, for Mary Ann Jones, and by *Walter A. Backus* of Milwaukee, guardian *ad litem,* and oral argument by *Mr. Frederickson.*

For the respondents there was a brief by *Affeldt & Lichtsinn,* attorneys, and *Eldred Dede* of counsel, all of Milwaukee, and oral argument by *George A. Affeldt.*

Currie, J.    We can most fittingly commence this opinion with the following moving statement of the able trial court appearing in the memorandum opinion:

"This is one of the most difficult cases to decide that comes to our courts, it deals with the human love and affection of the natural mother for her son, that she has suffered the pain of childbirth to bring him into the world—and on the other side, it affects the love of the people, who in their effort, to divide their love with some child, have taken all the legal steps they know, to bring that child into their home as their own, to love, protect, educate, and make it their legal heir. No one has tried harder to follow the law of adoption, than the petitioners, for the adoption of this child. . . .

"No matter how this case is decided, it must cause some-one heartaches and tears, but it may be that out of this case, will come some law from our court that will be a guide to all future cases of adoption, and some other mothers will not have to go through this litigation and heartache."

The trial court also stated in his opinion that counsel had informed him that regardless of how the case was decided, it would be appealed to this court, and that it should be appealed in order that the law might be clarified on the questions presented.

This appeal presents the following questions:

(1) Does a minor mother who has voluntarily given her written consent to the adoption of her child have the right to withdraw her consent without cause prior to the hearing being held on the petition for adoption?

(2) Is the consent of the father of an illegitimate child necessary to the adoption, where such father intermarried with the mother after the adoption proceedings had been commenced and the county court had assumed jurisdiction in such proceedings?

(3) Did the failure to comply with the requirements of sec. 322.04 (9), Stats. 1947, which requires that the consent of a minor parent *"shall be effective only when concurred in by the guardian ad litem,"* constitute a jurisdictional defect which invalidates the judgment of adoption?

(4) If the judgment of adoption is invalid, does the court in this proceeding have the right to dispose of the custody

of the child on the basis of what is determined to be in the best interest of the child?

1. The trial court having found that the mother's consent had been freely and voluntarily given after she had been fully apprised of her rights and the effect of such consent cannot be disturbed on this appeal, because the great weight of the evidence fully supports such finding. There, therefore, was no good cause for the attempted withdrawal of the mother's consent, unless it be the omission to have a guardian *ad litem* concur in the consent, which latter issue is hereinafter considered separately.

The cases are in conflict as to whether or not a mother who has given her consent to the adoption of her child can later withdraw such consent without cause prior to the entry of the decree of adoption.

In the annotation appearing on the question in ·156 A. L. R. 1011, the author thereof states:

"While, as brought out in the earlier annotation [138 A. L. R. 1038] there is authority for the view that a natural parent's consent to the proposed adoption of a child, duly given in compliance with a statute requiring such consent as a prerequisite to an adoption, may be effectively withdrawn or revoked by the natural parent before the adoption has been finally approved and decreed by the court, and a few courts have indicated that the right to withdraw consent is absolute and not dependent upon any particular reason, it must now be said, in view of the later cases (arising, it will be noted, in jurisdictions other than those represented in the earlier annotation), that *the trend of the more recent authority is toward the position that where a natural parent has freely and knowingly given the requisite consent to the adoption of his or her child, and the proposed adoptive parents have acted upon such consent by bringing adoption proceedings, the consent is ordinarily binding upon the natural parent and cannot be arbitrarily withdrawn so as to bar the court from decreeing the adoption,* particularly where, in reliance upon such consent, the proposed adoptive parents have taken the child into their custody and care for a substantial period

of time, and bonds of affection, in the nature of a 'vested right,' have been forged between them and the child." (Emphasis ours.)

The provisions for execution of the consent by the parent before the county or juvenile judge, and specifying that the minority of the parent should not be ground for revoking the consent, were not previously found in our statutes prior to the enactment of ch. 218, Laws of 1947. Such chapter completely revised the statutes on adoption and was adopted as the result of the report of a special interim committee of the legislature which thoroughly considered the problem between the 1945 and 1947 sessions of the legislature.

Sec. 322.04 (4), Stats., was amended by ch. 78, Laws of 1949, so as to substitute "a judge of any court of record" in lieu of the county judge or juvenile judge.

The primary and paramount consideration in construing the adoption statutes is the welfare of the child and the so-called rights of the natural parents in such child are subordinate thereto.

In 1 Am. Jur., Adoption of Children, p. 623, sec. 4, it is said:

"The welfare of the child is the primary consideration in the determination of an application for adoption. On this point there is unanimous agreement. *And it has been stated broadly that in a proceeding for adoption the court may ignore the natural rights of the parent if, in so doing, the child's welfare is promoted.* The diversity of opinion occurs when it is considered whether lack of notice, or adoption without consent, constitutes a violation of a vested right on the part of the parent. The legislature has ample power with respect to the care, custody, and maintenance of children within its borders, *and it is admitted that a parent has no vested right in his child which requires the protection accorded to property rights.* In order to be constitutional, however, adoption statutes must be construed so as to authorize the adoption of a child by strangers only in cases where the natural parents consent to the adoption, or where the proof shows that the child has been abandoned by its natural parents or *that it is*

*manifestly to the interest of the child that it be taken from their custody by some judicial proceeding of which they had notice."* (Emphasis ours.)

In *Adoption of Jackson* (1930), 201 Wis. 642, 645, 231 N. W. 158, in reference to this subject, it is said:

"Whatever the situation may have been at common law, under the statute, sec. 322.02, there can be no doubt that the controlling consideration is and should be the welfare and best interests of the child."

Dean Roscoe Pound in his The Spirit of the Common Law (1921), p. 189 (156 A. L. R. 1004) states:

"Finally, recent legislation and judicial decision have changed the old attitude of the law with respect to dependent members of the household. Courts no longer make the natural rights of parents with respect to children the chief basis of their decisions. *The individual interest of parents which used to be the one thing regarded has come to be almost the last thing regarded as compared with the interest of the child and the interest of society.* In other words, here also social interests are now chiefly regarded." (Emphasis supplied.)

Congress in 1937 enacted a new adoption statute for the District of Columbia upon the recommendation of leading welfare organizations, and the committee report stated that such statute was in accordance with modern thought based on years of experience by welfare workers in child-placement agencies. This statute, D. C. Code (1940), sec. 16–202, contains the following provision:

"The consent of a parent who is a minor shall not be voidable because of that minority."

Which is identical in meaning with the provision found in sec. 322.04 (4), Stats:

"The minority of a parent is not ground for revoking consent."

In the case of *Re Adoption of a Minor* (C. C. A. 1944), 144 Fed. (2d) 644, 156 A. L. R. 1001, the United States court of appeals for the District of Columbia was called upon

to decide a case with the fact situation very similar to the present one, wherein the mother of an illegitimate child had given her written consent to adoption, and thereafter, before the decree was entered, sought to withdraw such consent on the ground that the same was not voluntarily given and that it had been without knowledge of its consequences. Both the guardian *ad litem* and the trained social workers of the board of public welfare of the District of Columbia had recommended against the adoption.

The federal court in its decision in *Re Adoption of a Minor, supra,* held that there was no merit to the mother's contention that the consent had not been freely and voluntarily given, or had been given without knowledge of its consequences. The court also refused to follow the recommendations of the guardian *ad litem* and board of public welfare recommending against adoption for the reason that the same were made upon the assumption that the natural mother, as a matter of law, rightfully withdrew her consent. On the question of the right of the mother to withdraw her consent the court stated (p. 647):

"In our opinion, congress intended that consent of a parent once given and acted upon should not be withdrawn without cause. This intention is clearly indicated by the final sentence of the statutory language quoted and italicized above: 'The consent of a parent who is a minor shall not be voidable because of that minority.'

"Looking ahead to the administration of the new law congress could see the probability of changes of mind; especially as the mother's decision to keep or give up her infant would be influenced by deep-seated biological urges and psychological instincts and emotions. It could assume the intervention of kinsfolk and friends who would seek to change the mind and purpose of the natural mother according to their respective ideas of rightness and propriety. It could vision the bringing in of professional people and experts— doctors of medicine, clerics, lawyers, social workers—who might scrutinize the law to determine strengths and weaknesses. . . .

"But congress also knew that the law has from time immemorial and with great leniency relieved minors of responsibility for many acts and omissions, in order to prevent exploitation of them and their interests, which might otherwise result from their inexperience. It realized that when all other methods failed and all other avenues of escape were closed, a distraught mother might fall back upon this defense of minority. Then, balancing all the conflicting considerations of public policy and private interest, congress decided that the interests of the infant were of even greater importance than those of the girl mother. It recognized her privilege of keeping her child even under the harassing burden of illegitimacy, but it provided that once she had relinquished it and had voluntarily consented to its adoption, her consent could not be voided because of minority.

"It is inconceivable that congress—with prevision of such efforts to avoid parental consent and while forbidding, specifically, a· method of avoidance favored in the law above all others—could possibly, at the same time, have contemplated *unrestricted withdrawal of consent without cause or reason of any kind*. Instead, it is apparent that, in this respect—as well as in those provisions of the statute which make unnecessary the consent of parents who have abandoned their children, or who have absconded, or have been deprived of custody, or otherwise have revealed their unwillingness to measure up to parental responsibility—congress has with deliberation and finality closed the door against changes of mind. It has restored to the court in this instance, as in others during recent years, its old power, as *parens patriae*, to diagnose the case of the unfortunate infant and prescribe a course of treatment for its future; unhampered by the changing winds of emotion which alternately submerge and restore parental attributes."

In *Wyness v. Crowley* (1935), 292 Mass. 461, 198 N. E. 758, the mother of an illegitimate child who had given her consent to the petition for adoption attempted to withdraw the same before any hearing was had on the merits of the petition. The Massachusetts court held that she had no right to withdraw, and in its decision said (p. 464):

"To accede to the contention that such voluntary consent may be withdrawn would be equivalent to saying that parties may come to a court, deliberately give their assent to actions by the court in matters affecting their interests, and afterwards, at their will and pleasure, return to the court and undo what they did because on a future day they did not like it."

While as hereinbefore mentioned, there are other authorities holding that such consent can be withdrawn by the minor mother of the illegitimate child before the court has entered the decree of adoption, we believe the better rule, and the one which should be followed in Wisconsin, is that stated in *Re Adoption of a Minor, supra,* and *Wyness v. Crowley, supra.*

2. The question of whether the consent of the father of an illegitimate child is necessary to the adoption where the father married the mother after the adoption proceedings had been commenced has not been an easy one for this court to resolve.

Sec. 322.04 (4), Stats. 1947, provided as follows:

"The consent by a parent must be signed before the county judge or the juvenile judge of the county where the parent resides or is living or where the child was born, and after the judge has explained to the parent the effect of the consent and has examined the parent and is satisfied that consent is voluntary and is freely given. *The minority of a parent is not ground for revoking consent.*"

By ch. 78, Laws of 1949, the legislature amended sec. 322.04 (1), Stats., so as to substitute the board of county judges in place of the state department of public welfare as the authority which should prescribe the forms.

Sec. 245.36, Stats., for many years has provided:

"In any and every case where the father and mother of an illegitimate child or children shall lawfully intermarry, such child or children shall thereby become legitimated and enjoy all the rights and privileges of legitimacy as if they had been born during the wedlock of their parents; . . ."

In this case when the Manesewitzes filed the petition for adoption with the county court accompanied by the written consent of the child's mother on August 25, 1947, and such court on that date entered the order for hearing and the further order that the adoption division of the Milwaukee county court should make the investigation required by sec. 322.02, Stats., the child was illegitimate, but on August 3, 1950 (the date of the judgment of adoption), he was legitimate. This change in status occurred on May 5, 1948, as a result of the marriage of the mother to the father.

Does the provision in sec. 322.04 (1), Stats., that the consent of the father of an illegitimate child is not required, apply to the date the court first assumes jurisdiction in the adoption proceedings or the date the judgment of adoption is entered?

If the protection of the rights of the natural father were the only factor to be considered we would have no difficulty in deciding that the date of the entry of judgment is the controlling date. The fact that in the present case the father did not become eighteen years of age until March 28, 1948, and could not have legally married the child's mother prior thereto for the purpose of legitimatizing his child, which was many months after the court had assumed jurisdiction in the adoption proceedings, also makes a strong appeal to our sympathies in determining this question.

However, as pointed out by the authorities previously cited in this opinion, the best interest of the child is the controlling consideration which should prevail in construing our adoption statutes.

If the proposed adoptive parents have instituted adoption proceedings upon reliance of the written consent of the mother of an illegitimate to the adoption and the court has assumed jurisdiction in such proceedings, and have taken the child into their home for a substantial period of time so that bonds of affection have developed between the child and them, it could hardly be maintained that it would be in the

best interests of the child to disrupt all this and force the removal of the child from the foster home because of the subsequent marriage of the mother to the natural father and the failure of the father to then give his consent. In the present case, a period of three years, lacking but a few days, elapsed between the date of the court assuming jurisdiction of the adoption proceedings and the entry of the judgment decreeing the adoption. In the Massachusetts case of *Wyness v. Crowley, supra,* the period between the date of the mother's written consent and the decree of adoption was from June 6, 1933, to January 7, 1935. Under the construction of sec. 322.04 (1), Stats., favored by counsel for the respondent mother, if the mother and father intermarried the day preceding the entry of the decree and he failed to give his consent to the adoption, the court would in such a case be without jurisdiction to decree the adoption. We cannot accept such a construction.

Construing, as we do, that the determining date of whether the consent of the father of an illegitimate child, who later has married the mother, is the date the court assumes jurisdiction after all other jurisdictional requirements with respect to the consent of the mother have been met, and not the date of the final hearing or entry of the decree of adoption, does not mean that the county court should not give weight to the fact that the father and mother have intermarried since the commencement of the proceedings and are in a position to give the child a good home. The county court would necessarily have to give due consideration to these facts in determining whether the best interests of the child would require that the application of the prospective adoptive parents be granted or denied.

3. We now come to the question of whether the failure of a guardian *ad litem* to concur in the consent of the mother deprives the court of jurisdiction to enter the judgment of adoption. Sec. 322.04 (9), Stats. 1947, provided:

"In the case of a minor or incompetent parent or a parent who is on release under section 51.13, a guardian *ad litem* shall be appointed for the parent *and the consent of such parent shall be effective only when concurred in by the guardian ad litem.*"

The requirement that the consent of a minor parent should be effective only if concurred in by the guardian *ad litem* was not a new provision embraced in the 1947 revision of the adoption statutes enacted in ch. 218, Laws of 1947, but was a requirement which had existed for many years. The legislative council submitted a report on adoption procedures to the 1949 legislature and recommended certain changes in the adoption statutes, which changes had first been recommended to the council by the advisory committee of county judges. The only change suggested in sub. (9) of sec. 322.04, Stats., was to require that the consent of the minor parent be effective only when concurred in by the *written consent* of the guardian *ad litem,* and ch. 78, Laws of 1949, made this recommended change.

The reason for stating this statutory history is to emphasize the fact that such provision has been intentionally retained in our adoption statutes after most careful study by the 1947 interim committee, the legislative council which reported on the adoption procedures to the 1949 legislature, and the advisory committee of county judges who assisted the legislative council.

In *Adoption of Bearby* (1924), 185 Wis. 33, 34, 200 N. W. 686, this court stated:

"Adoption proceedings are statutory, and it is fundamental that the statutory prerequisites of jurisdiction must exist in order to authorize the court to act. . . . While there is an increasing disposition on the part of courts to place fair and reasonable construction upon statutes and proceedings relating to the adoption of children so that mere irregularities of procedure may not defeat the beneficent purposes of the institution of adoption, *plain jurisdictional requirements must be observed.*"

This statement was cited with approval in *Will of Bresnehan* (1936), 221 Wis. 51, 65, 265 N. W. 93. In *Will of Mathews* (1929), 198 Wis. 128, 132, 223 N. W. 434, it was also stated that adoption proceedings in this state are statutory and that the statute must be strictly followed.

The trial court was of the opinion that by reason of the fact that the mother of the child had the advice of her own mother and her attorney at the time she signed the consent, and that the consent was signed before Judge SULLIVAN who had fully explained to her the contents and its effect, the minor had received all the advice, counsel, and protection that a guardian *ad litem* could have supplied, and therefore there had been substantial compliance with the requirements of the adoption statutes without the guardian *ad litem* having concurred in such consent. With this we cannot concur, because the statute must be strictly construed and the concurrence in the consent of the guardian *ad litem* is a jurisdictional requirement which cannot be waived by the court.

The printed form of petition for adoption used by the county court of Milwaukee county for adoption cases (as does the uniform petition for adoption adopted by the board of county judges pursuant to sec. 253.31, Stats.) provides for an allegation that the necessary parent (or parents) have given her (or their) written consent at the time of the signing of the petition by the proposed adoptive parents. The county court would have nothing before it upon which to base the appointment of a guardian *ad litem* for a minor mother until the petition for adoption was filed, and by that time the written consent of the mother would already have been obtained. This would indicate that the function of the guardian *ad litem* in adoption cases is not to counsel with the mother at the time of her signing the consent, but rather that he is to make his own independent investigation thereafter as to whether the mother freely and voluntarily

executed such consent, and also as to whether the best interests of the child would be promoted by him joining in such consent. It would seem that such action by the guardian *ad litem* which is required under the provision of sec. 322.04 (9) should take place promptly after the appointment of the guardian *ad litem*.

The unfortunate predicament which confronts us in this case could be avoided in future cases if the attorney representing the adoptive parents and the county court, with whom the adoption petition is filed, would see to it that the guardian *ad litem* performs his duties in this respect and either files his written consent to adoption, or reports to the court adversely with respect thereto, before the court assumes jurisdiction by setting a hearing on the petition and ordering the investigation. (An attorney other than the counsel who appeared for the Manesewitzes on this appeal represented them in the initiation of the adoption proceedings.)

In the findings of fact the trial court criticizes the present guardian *ad litem* for not having given his written consent to the adoption, but we believe that such criticism is unjustified. The present guardian *ad litem* was not appointed until April 5, 1948, nearly eight months after the mother had signed her written consent. At the time he was appointed the mother had executed a written withdrawal of her consent and the order of his appointment stated that he was to take care of her interests in the proceedings on her application to withdraw her consent "during the prosecution of the withdrawal of the consent for the adoption of her child." Such being his order of appointment, he would have been derelict in his duty and subject to removal under the rule announced in *Will of Jaeger* (1935), 218 Wis. 1, 259 N. W. 842, 99 A. L. R. 738, if he had not followed the course of action which he did in this case. The wording of his order of appointment was entirely inconsistent with the duties

required of him under the provisions of sec. 322.04 (9), Stats.

Because of the jurisdictional defect in failing to obtain the concurrence of a guardian *ad litem* in the minor mother's consent to adoption, the judgment decreeing adoption is void and must be set aside.

4. The judgment of the trial court, in addition to decreeing adoption, provided, "That in any event the care and custody of said child, George Morrison, be and hereby is awarded to said petitioners, Carl Manesewitz and Jean Manesewitz, his wife." We interpret this to mean that irrespective of whether the decree of adoption was valid, nevertheless, the court awarded custody to the Manesewitzes.

Counsel for respondents cites the case of *Jones v. State ex rel. Falligant* (1933), 211 Wis. 9, 247 N. W. 445, as authority sustaining the trial judge in this respect and contend that the trial court, having found that the best interests of the child required that it be retained in the Manesewitz home, had the right to so award the custody. Adoption proceedings being purely statutory, the adoption statutes only confer upon the court the right to decree, or not to decree, adoption, and they give the court no power to award custody to the adoptive parents if adoption is denied. It should be pointed out that the case of *Jones v. State ex rel. Falligant* is not an adoption proceeding but one in *habeas corpus*.

*By the Court.*—Judgment reversed.

FAIRCHILD, J. (*dissenting*). The plan outlined by the natural mother, who now objects to the completion of the adoption originally contemplated, was made and carried forward by her. The record shows her willingness to have this accomplished, and it shows she was first advised as to the steps she was taking; and it further discloses her deliberate acts have created a situation in which her attitude now assumed is controlled, contrary to her present wishes due

to her change of mind, by the requirements affecting the welfare of the child.

It seems to be conceded, as the record now stands, that were this a *habeas corpus* proceeding, the child would remain in its present surroundings. It seems to me that the power vested in the county court in a proceeding of this character is such as to warrant an affirmance of the judgment of that court.

I am authorized to say that Mr. Chief Justice FRITZ concurs in this dissent.

The following opinion was filed February 5, 1952:

PER CURIAM. (*on motion for rehearing*). In their understandable zeal and uneasiness of mind respecting the welfare of the child involved counsel for respondents seem to have misconstrued our mandate. That appears from the conclusion of their brief in which they ask that the trial court's order "continuing the child's custody in respondents should be affirmed."

Upon the record and pleadings we concluded that there was but one issue presented: The question whether the proceedings taken for the adoption resulted in or permitted an effective order disposing of final custody of the child. We held that they did not and find nothing in respondents' brief on this motion to cause us to change our position.

We are urged to treat this matter as though it were a *habeas corpus* proceeding. We could not do that even if we were so inclined, for the issues were made upon the petition of the appellant which we consider as no more than an application for an order setting aside the adoption proceedings. No counterpleading was presented by respondents. If one had been made presenting an issue determinable as in a *habeas corpus* proceeding the trial court would have been

required to answer as would we, "You have custody and have shown no need for an order granting it."

We have not in this proceeding been asked to disturb the present physical status of the child nor should our mandate be construed as affecting it. Until that issue is properly presented as it was, for instance, in *Jones v. State ex rel. Falligant,* 211 Wis. 9, 247 N. W. 445, the court is without power to remove the child from the care of the respondents or in any official way to confirm their custody.

Motion for rehearing denied with costs.