In re Adoption of Tschudy: State Department of Public Welfare, Appellant, vs. Tschudy, Respondent.

*May 6—June 8, 1954.*

276

For the appellant there were briefs by the *Attorney General* and *William A. Platz,* assistant attorney general, and oral argument by *Mr. Platz* and by *Mr. Rodney O. Kittelsen,* district attorney of Green county.

For the respondent there was a brief by *Oscar T. Toebaas* of Madison, and *Joseph D. Viney* of Monroe, attorneys, and *Toebaas, Hart, Kraege & Jackman* of Madison of counsel, and oral argument by *Mr. Toebaas* and *Mr. Viney.*

STEINLE, J.   The State Department of Public Welfare, as appellant, challenges the judgment below and seeks a reversal of it upon the following grounds: (1) The trial court was without jurisdiction to decree the adoption for the reason that the department had not given its consent.  (2) The court was without jurisdiction to review the administrative action of the department in refusing its consent to the adoption. (3) The department, not the petitioner, represents the interests of the child in this litigation and it was improper to have permitted the petitioner to assert rights based upon the wel-

fare or interests of the child. (4) The action of the department in withholding its consent to the adoption was not arbitrary or capricious.

The respondent maintains that the trial court had jurisdiction to decree adoption in this case for the reason that the department acted arbitrarily, unreasonably, and capriciously in withholding its consent to the adoption, other facts presented having warranted the adoption. Respondent also contends that the court's findings to the effect that the child's best interests and welfare will be promoted by placing it with respondent, is conclusive on this appeal.

It appears that the death of the husband, Vernon Tschudy, set in motion a series of circumstances perplexing and difficult for both the petitioner and the department and which resulted in the present controversy. The trial court found that after the husband's death the petitioner's conduct and care of the child had been satisfactory and that the child's best interests would be served by a return of the child to her. The record indicates that following the husband's death the department investigated and considered the petitioner's situation as it existed, and concluded that in view of the changed circumstances it would not be for the child's best interests to approve an application by this petitioner for the adoption of the child, and, therefore, withheld its consent. George Keith, the department's acting director, who by statute had the responsibility of decision for the department, testified that consent was declined upon various considered bases, to wit: The department's policy of requiring two-adoptive-parent standard; Judge Lamboley's decision vesting custody in the department and his determination of best interests; the expressed view of a psychiatrist that the child needed a strong father figure; statements of persons concerning petitioner's disciplining of the child; petitioner's failure to return the child in compliance with court order thereby requiring a search for it; the irregularity of plan of care for the child;

lack of stability; and also upon other factors. Specifically, the director in his testimony said:

"I devoted many hours in studying this information, in trying to arrive at a decision, not easily, because Mrs. Tschudy's claim is a very appealing one. Forced to decide what is in our judgment best for the boy Jeffrey, the decision could not be made just on the basis of what is best for Mrs. Tschudy is necessarily best for Jeffrey, but on the basis of carrying out the responsibility of the department, on the basis of the statutes and our understanding of our responsibility, that and the well-being of the child and our statutory obligation to do our best to carry out."

The welfare of the child is the paramount consideration in the determination of an application for adoption. On this point there is unanimous agreement. 1 Am. Jur., Adoption of Children, p. 623, sec. 4. That such view prevails in this state was declared in *Adoption of Jackson* (1930), 201 Wis. 642, 645, 231 N. W. 158, when the court said:

". . . that under the statute . . . there can be no doubt that the controlling consideration is and should be the welfare and best interests of the child."

Obviously, both the court and the department in their respective roles were eager to protect the child's interests in this matter. That their conclusions are not the same in nowise reflects upon their devotion to duty.

In our state, adoption is a judicial proceeding and, when jurisdiction as prescribed by law is acquired by the court, it has the right to decide all matters arising from the adoption application. With regard to children whose permanent care, custody, or guardianship has been transferred to the department, that agency's consent to the adoption is prescribed by statute. Should the department consent to the adoption, it is still the court's duty to determine the best interests of the child, and the court is not obliged to follow any recommendation of best interests implied in such bestowal of consent.

In this cause we are concerned primarily with a consideration of the court's jurisdiction when consent of the department, as prescribed by statute, is not given. The respondent contends that the court may review the department's refusal of consent and upon ascertainment that the department acts arbitrarily, capriciously, or unreasonably, can disregard or waive such refusal and proceed to a determination of the application upon the merits.

Although adoption is a practice of very great antiquity, it was not known in the common law of England and it exists in the United States only by virtue of statutes. 2 C. J. S., Adoption of Children, p. 370, sec. 2. In Wisconsin, adoption proceedings are statutory. *Lacher v. Venus* (1922), 177 Wis. 558, 188 N. W. 613; *Petition of Rice* (1923), 179 Wis. 531, 192 N. W. 56. Adoption is authorized and regulated by provisions of ch. 322 of the statutes. Statutory provisions applicable to the case at bar are:

Sec. 322.01 "Any adult may petition the county court of the county of his residence for permission to adopt a person of any age; and any nonresident of the state who is related to the person to be adopted may petition the county court of the county in which such person resides for such permission; but no petition by a married person shall be granted unless the other spouse joins therein or is the natural father or mother of such person."

Sec. 322.04 (1) "Except as otherwise specified in this section, no adoption of a minor shall be granted without the written consent of his parents or his guardian if he has one. . . ."

Sec. 322.04 (2) "If the parental rights of one parent have been judicially terminated, the consent of the other is sufficient; but if the parental rights of both parents or the surviving parent or the mother of an illegitimate minor have been so terminated, adoption may be granted on receipt of a report and recommendation of the state department of public welfare, or if the permanent care, custody, or guardian-

ship of the minor has been judicially transferred to the state department of public welfare or to a licensed child welfare agency or county home for dependent children, then on the consent of the department (as to children committed to said department) or of such agency or home."

Sec. 322.04 (5)  "If a child welfare agency or a county home for dependent children or the state department of public welfare is the guardian of the minor, adoption shall not be granted until a detailed report and recommendation and consent by such guardian are filed with the court. If the department makes a report and recommendation pursuant to subsection (2), the agency or home need not report or recommend pursuant to this subsection."

Sec. 322.05  "If, after the hearing and the filing of the necessary consent to adoption, the court is satisfied that the petition is true, that the petitioners are of good moral character and of reputable standing in the community and able to properly maintain and educate the person proposed for adoption, that his best interests will be promoted by adoption, that he is suitable for adoption, and that all legal requirements have been complied with, the court shall make an order that from the date thereof such person shall be to all legal intents and purposes the child of the petitioners. The order may change his name to that of the adoptive parents. The order shall set forth all jurisdictional facts. . . ."

The State Department of Public Welfare exists and functions by authority of ch. 46, Stats. Its policies are established by its board of public welfare. Its administrative and executive powers and duties are vested in a director and administered by him. It is charged with specific duty as to care and protection for delinquent, dependent, and illegitimate children. It maintains and governs Wisconsin child center which cares for and educates physically, intellectually, vocationally, and morally children placed therein until temporary or permanent homes are procured for those eligible. It is the legal guardian of children permanently committed to that center. By authority of sec. 46.015, Stats., the depart-

ment may arrange for permanent commitment of children directly to it instead of to the center.

Sec. 48.22, Stats., provides in part as follows:

"(2) The department is the legal guardian of all children permanently committed to the center. It may place children permanently or temporarily committed in families under the conditions prescribed for licensed child welfare agencies, and may make written contracts with responsible and suitable persons for keeping them during their minority, providing therein for their education in the public schools for teaching them some useful occupation, and for their kind and proper treatment as members of the families in which they are placed. . . .

"(3) The department may consent to the adoption of any such permanently committed ward in the manner provided by law; and such consent shall have the same effect as if given by the parents of the child. Such consent shall be in duplicate, one copy to be filed with the department and the other delivered to the county court in which the proceedings for adoption are taken. The adoption of the child ends the guardianship of the department.

"(4) The department may appoint, to serve during its pleasure, agents to investigate all applicants and applications to take or adopt any such children. As directed by the department, each agent shall visit children placed in charge of any person by the department, investigate their condition and report to the department. . . ."

The legislature has distinguished between situations in which the "consent" of the department is necessary and cases where only a "recommendation" is required. The 1947 legislature, after study and comprehensive report by a 1945–1947 interim committee, revised the chapter relating to adoption into substantially its present form. Previously, the statute had required the "consent" of the department in a number of situations where it is no longer prescribed. As to cases where parental rights have been terminated and permanent custody or guardianship judicially transferred to the Wisconsin child

center (which is under the jurisdiction of the department), the 1947 legislature prescribed that adoption could be granted on consent of the department. By ch. 288, Laws of 1953, the legislature amended sec. 322.04 (2), Stats., so as to apply the requirement of consent by the department to cases where a child is committed to the center. It substituted the term "state department of public welfare" for that of "Wisconsin child center" in said section.

Since adoption proceedings are statutory, the essential statutory requirements must be at least substantially met. In *Lacher v. Venus, supra,* this court said (p. 567) :

". . . the proceedings for the adoption of children are purely statutory, and, affecting as they do substantial rights, there must be substantial compliance with their provisions."

Although adoption proceedings are of a judicial nature, plain jurisdictional requirements must be observed. In *Adoption of Bearby* (1924), 185 Wis. 33, 34, 35, 200 N. W. 686, it was held that in adoption proceedings it is fundamental that the statutory prerequisites of jurisdiction must exist in order to authorize the court to act. The same principle was declared in *Will of Bresnehan* (1936), 221 Wis. 51, 65, 265 N. W. 93. In *Will of Mathews* (1929), 198 Wis. 128, 132, 223 N. W. 434, the court held that adoption statutes must be strictly followed.

The consent of parent or guardian, as required by statute, forms the basis of the proceeding for adoption. It is a jurisdictional fact, a condition precedent, compliance with which is essential to a full validity and effect of the decree. 1 Am. Jur., Adoption of Children, p. 642, sec. 40. Consent is a jurisdictional fact and without it a valid order of adoption cannot be made. 2 C. J. S., Adoption of Children, p. 382, sec. 18.

It is recognized that there is some diversity of view amongst the states as to the purpose and effect of consent.

However, in our state it has been held that consent of a parent, as required by statute, is prerequisite to a valid order of adoption. *Estate of McCormick* (1900), 108 Wis. 234, 238, 239, 84 N. W. 148; *Lacher v. Venus* (1922), 177 Wis. 558, 188 N. W. 613. It is also the rule that concurrence of consent by a guardian *ad litem* of a minor parent as prescribed by statute is a jurisdictional requirement which cannot be waived by the court. *Adoption of Morrison* (1951), 260 Wis. 50, 49 N. W. (2d) 759, 51 N. W. (2d) 713. In Minnesota it was recently held that under the statute the consent of a custodial guardian, to wit, an accredited, private, home-finding association, was essential to a valid adoption order. *Petition of Sherman* (1954), 000 Minn. 000, 63 N. W. (2d) 573. It was held in *Adoption of Burkholder* (1930), 211 Iowa, 1222, 233 N. W. 702, that the consent of a guardian is necessary. The language in sec. 322.05, Stats., that "if, after the hearing and the filing of the *necessary consent* . . . the court shall [proceed]" is plain and unambiguous.

In the case at bar it appears that the learned trial court recognized that the department's consent was requisite. However, the court was under the impression that it had the right to review the action of the department in refusing consent for the reason that the department acted arbitrarily and unreasonably and that it exceeded its power in establishing and enforcing its rule requiring a two-adoptive-parent standard, such policy being in contravention of sec. 322.01, Stats., permitting one adult person to petition for the adoption of a person of any age.

There is no statutory authority in this state authorizing a county court to review or disregard or waive a failure or refusal of consent to adoption. In *St. Vincent's Infant Asylum v. Central Wis. T. Co.* (1926), 189 Wis. 483, 206 N. W. 921, the court held that a defect in adoption proceedings cannot be cured by the application of equitable principles.

Sec. 322.04 (1), Stats., provides that except as otherwise specified in the section no adoption of a minor shall be granted without the written consent of his parents or his guardian if he has one. Sec. 48.22 (3) provides that consent which the department may give to the adoption of a child permanently committed to the child center shall have the same effect as if given by the parents of the child. Sec. 48.22 (2) declares that the department is the legal guardian of all children permanently committed to the center.

However, respondent contends that there is a distinction between the consent required of natural parents and that required of an administrative agency. In support it cites *Adoption of Kure* (1936), 197 Minn. 234, 266 N. W. 746, wherein it was held that the consent of a board is not the same right as that exercised by parents and that where the board of control unreasonably withholds its consent to the adoption of a child under its control, the court may grant the petition for adoption, notwithstanding the refusal of the board to consent. Cases from other states embracing the same rule and in some instances referring to *Adoption of Kure, supra,* are also relied upon by the respondent. Recently the Minnesota court in *Petition of Sherman* (1954), 000 Minn. 000, 63 N. W. (2d) 573, was concerned with the construction of a statute similar to ours. Its sec. 259.24 (1), Minn. Stats., provides:

"No child shall be adopted without the consent of his parents and his guardian, if there be one, except in [certain enumerated cases.]"

Another Minnesota statute, sec. 260.12, provides that, unless otherwise ordered, a dependent and neglected child intrusted to the care and control of the commissioner of public welfare or to a private association becomes the ward and is subject to guardianship of the agency. The court determined that such custodial guardianship was included within

the meaning of the term "guardian" as referred to in its sec. 259.24 (1), *supra.*

In *Petition of Sherman, supra,* a private home-finding agency to whose care certain dependent and neglected children had been committed, had placed the children in the home of adoption petitioners where they had remained for more than six months before the adoption petition was filed. At the hearing the agency refused its consent to the adoption. No evidence was produced on its behalf in substantiation of an assertion by it that the granting of the petition would not be for the welfare. of the children. Evidence was presented by the adoption petitioners which appears to have been favorable to the application. The respondent here argues that in *Petition of Sherman, supra,* the matter had been determined upon a discretionary basis and not on arbitrary, unreasonable, capricious, and unlawful grounds. We cannot subscribe to such view after considering the statement in that court's opinion that (63 N. W. (2d) 577):

"A statutory provision which accords to the custodial guardian the same unqualified right as a parent to refuse to consent to an adoption—without any evidentiary showing to justify such refusal other than the unsupported statement that the adoption is not for the best interests of the child— seems drastic, but in so far as such provision is unreasonable the remedy is with the legislature. It goes without saying that not all proposed adoptions are for the best interests of the child and that undoubtedly the findings of an accredited association dedicated to finding adoptive homes for dependent and neglected children should be given great weight by the district court; nevertheless, a serious question arises as to whether the child's interests are best protected by denying the district court all discretionary power to pass upon the validity of a custodial guardian's refusal to consent to an adoption. We can only conclude, however, that the explicit wording of sec. 259.24, sub. 1, is to be interpreted to mean that the legislature intended to deprive the district court of jurisdiction to pass upon the merits of a proposed adoption

if the guardian of the child refuses to give his consent, even though such refusal to consent is unsupported by any evidentiary showing that the proposed adoption is not for the best interests of the child."

It appears to us that action of an agency such as that indicated in *Petition of Sherman, supra,* might well be judicially construed as arbitrary or unreasonable. If a court is powerless to disregard the arbitrary failure or refusal of consent of a private agency when acting as guardian, it seems to us that it likewise lacks power to waive or disregard such refusal when it is manifested by a public board acting in guardian capacity.

Sec. 322.04 (2), Stats., provides that if the permanent care, custody, or guardianship has been judicially transferred to the department, adoption may be granted on the consent of the department. It is our view that the statute must be construed to mean that under applicable circumstances the consent of the department is necessary whether the department represents such children in a guardian capacity or not. Our adoption statute makes no distinction as to the quality of consent that may be given by parents, guardians, or others. We find no valid reason to declare that the consent required by statute of an agency, private or public, differs in any degree from that required of a parent or guardian or that it is less effective.

In *Adoption of Morrison* (1951), 260 Wis. 50, 49 N. W. (2d) 759, this court held that failure of a guardian *ad litem* to concur in the consent of a minor parent (mother) as specified in sec. 322.04 (9), Stats., deprived the court of jurisdiction to enter judgment of adoption. It is to be noted that sec. 322.04 (1) provides that the word "guardian" as used in the section does not mean or include "guardian *ad litem.*" Under secs. 322.04 (1) and (9), the consent of a guardian *ad litem* is not essential to jurisdiction in situations where the parents are not minors or not incompetent. In

*Adoption of Morrison, supra,* the court determined that the failure of concurrence of consent by the guardian *ad litem* was a jurisdictional defect fatal to the validity of the adoption order. We are unable to declare that the provision of sec. 322.04 (9), requiring concurrence of consent by a guardian *ad litem* for a minor parent, is more effective and demands a higher degree of observance than does that required in sec. 322.04 (2), which specifies that adoption may be granted on consent of the department. It is to be observed that sec. 322.04 (1) also provides that the term "guardian" does not include one who has "temporary custody or control" of a child. Here, the department holds permanent custody and legal guardianship of the child. Whether the department's action in refusing to consent was based upon its rights over the child in capacity either as permanent custodian or legal guardian is immaterial and the trial court had no power to review its action in such regard.

In its claim that the establishment and enforcement by the department of a two-adoptive-parent standard thwarts the effectuation of sec. 322.01, Stats., and hence is an attempt at legislation, the respondent urges that such policy substantially increases the requirements for adoption over those prescribed by statute which authorizes an adoption by a "single" person.

Although the legislature through its enactment permits adoption by "single" adult persons, it does not prohibit the withholding of consent by any parent, guardian, or agency (whose consent is prescribed) for reason that the petitioner is a "single" adult person. A parent is free to withhold consent on any or no basis. Its consent can neither be compelled or disregarded by a court for any reason. We have already herein determined that the consent of a guardian or agency as prescribed by statute differs in no respect from that required of a parent. A court may no more review the failure or refusal of consent of a guardian or of an agency,

public or private, than it may review such action on the part of a parent. Under the existing statute the right of a parent, guardian, or agency (whose consent is prescribed), to consent or withhold consent is absolute and not subject to review by a court. Only the legislature has power by constitutional means to restrict an agency as to prerogatives in such regard. Since the legislature has the power to abolish the requirement of consent of an agency (as it did by revision in 1947 and which modification remains in effect at this time), it has equal power to restrict an agency in any regard as to the withholding of consent. Should it desire to permit withholding of consent on every basis except for the absence of a complete adoptive family, it may do so. Where the legislature requires consent of a parent, guardian, or agency and does not restrict the withholding of consent by such parent, guardian, or agency, the court is powerless to review the withholding of it by such persons for any reason.

The court's power in adoption matters exists only by virtue of statute. Jurisdictional requirements must be observed and the item of consent is a jurisdictional essential. There is no statute which vests in the county court the authority to review the acts of a public administrative body in the exercise of powers granted it by the legislature. Secs. 227.15 and 227.16, Stats., provide for review of rules and orders of certain administrative agencies of the state including those of this department, but the forum is restricted to the circuit court for Dane county. Review is upon a record and trial *de novo* is not provided. It is also a rule in this state that in the absence of legislative authorization to review facts, administrative determinations can be reviewed only by certiorari, in which only questions of law are raised. *Clintonville Transfer Line v. Public Service Comm.* (1945), 248 Wis. 59, 68, 69, 21 N. W. (2d) 5.

It does not appear that the alleged two-adoptive-parent standard maintained by the department is in the form of

written rule. It is asserted as a policy consonant with modern-medical and social-welfare thought. The record here, however, indicates that there is diversity of opinion amongst the experts as to the merit of the application of such standard in all cases. We are not unmindful of the department's position that it considered other factors in addition to such policy in the instant situation. Strict adherence by the department to such policy obviously would make impossible the adoption by a "single" adult person of any child committed to the care of the department or for which it acts as guardian. We are compelled, however, to hold that a county court in an adoption proceeding lacks authority to review the department's refusal of consent and that it has no jurisdiction to adjudicate the reasonableness of a rule or policy or position alleged to have been invoked by it when refusing to consent. It is not within our power in this proceeding to determine the reasonableness of such rule or policy.

There is no principle in law or equity by which the Tschudys secured vested rights to the custody of the child. They obtained none by contract, express or implied.

Since the consent of the department was a jurisdictional requisite to a valid decree of adoption and the refusal of the department's consent was not subject to review by the trial court, the absence of such consent precluded the court from validly rendering its judgment and we are compelled to hold that the judgment as entered was invalid and of no force. The appellant was entitled to summary judgment in accordance with its application. In view of these conclusions we find it unnecessary to determine other issues raised upon this appeal.

*By the Court.*—Judgment reversed, with directions to enter summary judgment in accordance with appellant's motion.