In re Adoption of Shields: Westphal and wife, Respondents, vs. State Department of Public Welfare, Appellant.

*April 11—May 6, 1958.*

220

For the appellant there were briefs by the *Attorney General* and *William A. Platz,* assistant attorney general, and oral argument by *Mr. Platz.*

For the respondents there was a brief and oral argument by *John A. Moore* of Oshkosh.

A brief was filed by *John M. Spindler* and *Clark, Rankin, Nash, Emmerling & Spindler,* all of Manitowoc, as *amici curiae.*

WINGERT, J. We hold that the county court erred in waiving the consent of the guardian and that therefore the order for adoption, made without the guardian's consent, must be reversed.

Sec. 48.84 (1), Stats., provides:

"No adoption of a minor may be ordered without the written consent of the following to the adoption of the minor by the petitioner: . . .

"(c) The guardian of the minor, if there is one; . . ."

The State Department of Public Welfare was the duly appointed and acting guardian of Patti Lea Shields. It refused to consent to her adoption by the petitioners.

Sec. 48.85, Stats., provides that where the guardian refuses to consent to the adoption, he shall file a summary of the reasons therefor with the court, after study of which the court may dismiss the petition for adoption or may hold a hearing, on notice to both petitioner and guardian, "to determine whether the guardian's refusal to consent is contrary to the best interests of the child."

Sec. 48.85, Stats., then continues as follows:

". . . If the court, after the hearing, determines that the guardian's refusal to consent is arbitrary, capricious, or not based on substantial evidence, it may waive the requirement of such consent and proceed to determine the petition for adoption in accordance with the best interests of the child."

In the present case the county court held a hearing, took testimony, and found that the guardian's refusal to consent was arbitrary, capricious, and not based on substantial evi-

dence. In our opinion that finding is not warranted by the evidence, and is based on a misinterpretation of the statute. The county court's opinion, as we read it, shows that the finding was based on mere disagreement with the reasons advanced by the guardian for concluding that the proposed adoption would not be in the best interests of the child. Such disagreement, even if supported by evidence, is not alone enough to justify waiver of the guardian's consent.

1. *Construction of waiver statute.* The terms of sec. 48.85, Stats., read in the light of the statutory history, make it clear, we think, that the guardian's consent may not be waived merely on a determination that the proposed adoption will accord with the best interests of the child. Any other construction would disregard or emasculate the strong words, "arbitrary, capricious, or not based on substantial evidence."

In 1954 this court held that under the then controlling statute the consent of the State Department of Public Welfare was an absolute prerequisite to the adoption of a child of which it was guardian, that the department's refusal to consent could not be reviewed by the court, and hence that such refusal conclusively placed adoption beyond the power of the court to accomplish. *Adoption of Tschudy,* 267 Wis. 272, 291, 65 N. W. (2d) 17. Legislative relief from that ruling was promptly sought. Bill No. 444, S., introduced in the 1955 legislature to revise the Children's Code, contained a new sec. 48.85, Stats., to eliminate the guardian's absolute veto power over adoptions. That section, as it appeared in the original bill, would have authorized the court to waive guardian's consent upon determining after a hearing that refusal of such consent is contrary to the best interests of the child. That provision was amended, however, so that as the bill finally passed, sec. 48.85 was in the form above quoted, authorizing waiver only "if the court, after

the hearing, determines that the guardian's refusal to consent is arbitrary, capricious, or not based on substantial evidence."

Thus it appears that the legislature deliberately rejected the original grant of permission to waive the guardian's consent on a finding that waiver would be in the best interests of the child, and substituted a more limited power to waive only on finding that the guardian was arbitrary, capricious, or not acting on substantial evidence in refusing to consent.

In the light of this legislative history, we construe sec. 48.85, Stats., as authorizing the county court to dispense with the guardian's consent to adoption only where the evidence taken at the required hearing discloses either (1) that the guardian's refusal to consent is not based on a *bona fide* belief that such refusal is for the best interests of the child, or (2) that the guardian has no reasonable basis in fact for believing that the proposed adoption would be contrary to the child's best interests. In either of those cases the refusal of consent would be arbitrary, capricious, or not based on substantial evidence. On the other hand, the court is not authorized to waive guardian's consent merely because it disagrees with the guardian's appraisal of the facts and, substituting its judgment for that of the guardian, considers that the proposed adoption will best serve the interests of the child.

If the guardian's consent is either given or properly waived by the court, then the court must determine, as an original proposition, whether or not the proposed adoption is in accordance with the best interests of the child; but that question is not reached for independent decision by the court in making the preliminary determination whether the guardian's refusal to consent may be waived.

In considering where the best interests of the child lie, both guardian and court are to be guided by the declaration

of intent in the first section of the Children's Code, sec. 48.01, Stats., which reads in part:

"(2) *Intent.* It is declared to be the intent of this chapter to promote the best interests of the children of this state through: . . .

"(f) Assurance for children needing adoptive homes that they will be placed in the *best home available;* . . . *protection* for children who are legally established in adoptive homes *from interference by their natural parents."*

Thus the State Department of Public Welfare, in determining whether to consent to a particular adoption, and the court in determining whether to waive consent if it is refused, must have in mind that the objective is not only a good home for the child, but the best home available, a home where the child will be protected from interference by its natural parents.

2. *Evidence.* Applying this construction of sec. 48.85, Stats., to the present case, we consider that the consent of the guardian should not have been waived. It is not contended, and the evidence would not support a finding, that the State Department of Public Welfare, as guardian, did not honestly believe that the proposed adoption by the petitioners would be contrary to Patti Lea's best interests. There is abundant evidence in the record on which the guardian could reasonably determine that the adoption would not accord with her best interests.

In the summary of the guardian's reasons for withholding consent, filed with the court pursuant to sec. 48.85, Stats., the guardian set forth several reasons for its action, of which we need consider only two, viz., that the petitioners are not of suitable age, and that Patti's mother had visited the child in their home and might interfere with her welfare and upbringing if she should remain there. Evidence at the hearing disclosed that after Patti Lea had been taken from petitioners' home she was placed with another "considerably

younger'" couple who wanted to adopt her and whose home would, in the guardian's opinion, be better for her than that of petitioners.

On the matter of age, the supervisor of adoptions of the State Department of Public Welfare testified that the department's policy is generally that young children should not be placed with people who are more than forty years old, in the absence of special circumstances not applicable to Patti Lea. In general, "on the basis of the teachings of our profession," the department would object to anybody over forty-four adopting a child of four. Young children cause more irritability in older parents; the parents cannot understand why the children act as they do; and there is a tendency to spoil the children. She quoted authorities on the subject of adoption, to the effect that there is general agreement that the age difference between the adopter and the adoptive child should be similar to that in a normal family; that in most instances the age difference should be between twenty-five and forty years; that observance of such a standard provides a natural relationship between the parent and child and protects the child from losing his parents during his growing period, whereas adoption by middle-aged or elderly couples creates a relationship more like that of grandparents to grandchild. A large number of placement agencies, including the principal ones operating in Wisconsin, have age standards comparable to or more restricted than those mentioned.

In the present case the petitioners were fifty-one and almost forty-four years of age on the date of the hearing, and they are forty-seven and a few weeks under forty years older than Patti. The other couple wishing to adopt Patti, which adoption the department considers preferable, are "considerably younger."

There was also testimony that it is not considered good practice in child placement to place a child in an adopting home known to the natural parents, since the latter, particu-

larly the mother, may insist on seeing the child and thereby cause undesirable tension on the part of the child and anxiety on the part of the adoptive parents. As pointed out above, protection from such interference is one of the objectives of the Children's Code. Here Patti Lea's mother knew she was in the petitioners' home and hence would be able to find her later if she should desire to do, so.

We think the evidence just referred to was alone sufficient to show that the department's refusal to consent to the adoption was not arbitrary, capricious, or unfounded in fact. It is therefore unnecessary to refer to other evidence in the record tending to the same conclusion. It is common knowledge that there are many couples who want to adopt a child, and we think it was well within reason for the department to conclude that a more-advantageous adoption could be found for this attractive little girl.

Considerable criticism is made of the department's handling of this case, both by the county court and in the argument in this court. Thus it is said that Patti Lea was left with the petitioners so long that they became greatly attached to her and she to them, that her removal was harrowing to them and to her, that it was undiplomatically handled, and that the department showed undue haste in consenting to adoption by the people with whom she was then placed. We need not weigh the merits of these criticisms, for they are beside the point. The guardian's consent to an adoption cannot be waived because the guardian may have been unkind, or even arbitrary or capricious, in its treatment of the petitioners for adoption, or in temporarily disturbing the immediate feelings of the child. The only question for the court at that stage of the proceeding is whether the guardian is arbitrary or capricious or has no reasonable ground in the facts for considering that the particular adoption will not be for the best interests of the child in the long run, having in mind the statutory purpose to assure placement in the best

home available; not merely in a good home, but in the best home available.

*By the Court.*—The order of adoption is reversed, with directions to set aside the order waiving consent of the guardian, and deny the petition for adoption.

HALLOWS, J., took no part.