In re Adoption of Brown: Peebles and wife, Respondents, v. Milwaukee County Department of Public Welfare, Appellant.

*September 9—November 7, 1958.*

432

For the appellant there were briefs by *C. Stanley Perry,* corporation counsel of Milwaukee county, and *George E. Rice,* assistant corporation counsel, and oral argument by *Mr. Rice.*

For the respondents there was a brief and oral argument by *John W. Emmerling* of Milwaukee.

FAIRCHILD, J.   The Peebles again urge that the department's appeal must be dismissed because it was not timely. Their argument is that the notice of appeal refers to an appeal both from the order of adoption dated July 1, 1958, and from the order of April 15, 1958.  The order of April 15, 1958, was an order based upon the decision of March 25th which waived the requirement of consent.  The Peebles point out that more than sixty days elapsed after April 15th and prior to service of notice of appeal.

If the appeal had been taken solely from the order of April 15th, we should have to dismiss it.  The reason would not be that it was late, but that the order of April 15th was not appealable.  The statute which limits the time for appeal from an order or judgment of the county court is sec. 324.04 (1), but it has been held that only an order of the county court which falls within one of the classifications set forth in sec. 274.33, Stats., is an appealable order.  *Will of Krause* (1942), 240 Wis. 68, 2 N. W. (2d) 732.  Sec. 274.33 (2) provides that a final order affecting a substantial

right made in special proceedings is appealable. An adoption proceeding, for this purpose at least, falls within the category of a special proceeding and the order of adoption is made appealable by this sub. (2). We are of the opinion that no provision of sec. 274.33 makes an order of the county court, under sec. 48.85, waiving the requirement of the guardian's consent, an appealable order. The guardian's custody and its obligations with reference to the child continue until the order of adoption, even though the requirement of its consent be waived. We do not view an order waiving the requirement of· a guardian's consent as a final order affecting a substantial right and are of the opinion that review of such waiver is properly had upon appeal from the order of adoption. This particular point was not raised in *Adoption of Shields* (1958), 4 Wis. (2d) 219, 89 N. W. (2d) 827, but it appears from the opinion that we there reviewed the waiver of the requirement of the guardian's consent upon an appeal from the order of adoption. Sec. 274.34 provides that upon an appeal from a judgment this court may review any intermediate order which involves the merits and necessarily affects the judgment. Respondents point out that this statute in form is limited to an appeal from a judgment, although substantially the same statute was relied upon in *In re Baker* (1888), 72 Wis. 395, 400, 39 N. W. 764, as authority for reviewing an intermediate order upon appeal from a final order in a proceeding upon an assignment for the benefit of creditors. Whether sec. 274.34 could apply to an order of adoption or not, we think that when there is a proper appeal from a final order in special proceedings at least those intermediate orders which were not in themselves appealable but which affected the merits of the final order must necessarily be reviewable.

Therefore we disregard the portion of the notice of appeal which suggests that an appeal was being taken from the order of April 15th and consider this as an appeal from the

order of adoption in which we may review the waiver of consent under sec. 48.85, Stats. Without such waiver, of course, consent of the guardian would be a statutory requirement and the order of adoption could not stand.

Upon the merits of the appeal the question is whether the record made in the county court supports the conclusion that the department's refusal to consent was arbitrary, capricious, and without substantial evidence. Sec. 48.85, Stats.

We have recently considered an adoption proceeding where the facts are similar in some respects to the present one. *Adoption of Shields* (1958), 4 Wis. (2d) 219, 89 N. W. (2d) 827. At page 224, we said:

"In the light of this legislative history, we construe sec. 48.85, Stats., as authorizing the county court to dispense with the guardian's consent to adoption only where the evidence taken at the required hearing discloses either (1) that the guardian's refusal to consent is not based on a *bona fide* belief that such refusal is for the best interests of the child, or (2) that the guardian has no reasonable basis in fact for believing that the proposed adoption would be contrary to the child's best interests. In either of those cases the refusal of consent would be arbitrary, capricious, or not based on substantial evidence. On the other hand, the court is not authorized to waive guardian's consent merely because it disagrees with the guardian's appraisal of the facts and, substituting its judgment for that of the guardian, considers that the proposed adoption will best serve the interests of the child."

The decision to waive consent in the instant proceeding was made before our decision in *Adoption of Shields.* Our decision was called to the attention of the county court on a motion for reconsideration but the motion was denied without written opinion.

Applying the statutory provision, in the light of our construction of it in *Adoption of Shields,* to the record before us, we conclude that the county court erred in its decision

and the order of adoption must be reversed because of the lack of the guardian's consent.

The three reasons given by the department and our comments thereon are as follows:

(1) *The ages of petitioners.* The facts are undisputed. The policy of the department on the age of applicants for adoption appears in mimeographed instructions:

"Wife under thirty-five, husband under forty, at time of first application. For older couples, consideration will be given for special children.

"The number of children available for adoption is small compared to the number of couples who want to adopt a child. The agencies feel very deeply their responsibility to protect the child's interest by selection of the home that seems best for him. Experience has shown that generally the placement of the child in the home of younger parents has been more satisfactory."

It appeared from the testimony that the "special" children referred to in the statement of policy are those for whom because of age, race, or handicap there would be few qualified applicants. There was testimony by a psychiatrist and psychologist giving reasons in support of the quoted policy. The reasons given were similar to those described in *Adoption of Shields* at page 226, although the age policy of the State Department of Public Welfare involved in that case was "generally that young children should not be placed with people who are more than forty years old." We gather from the testimony that age differentials, such as existed between Mrs. Peebles and Lois (forty-eight years) and Mr. Peebles and Lois (forty years), are facts which are entitled to great weight, although there can be circumstances where such differentials should not bar the adoption.

Indeed, the instant case was not like the great bulk of those handled by the department. In less than two per cent of the cases does the department become guardian of a child who

has already been living in the home of the applicants. The department ordinarily places a child after it has been made responsible for the child and its most important decision about the qualifications of applicants for adoption is ordinarily made before the child is placed.

It is fair to say upon this record that in January, 1957, the department's adoption committee recognized the age problem, yet, because the Peebles had cared for the child for seventeen months, was interested in getting further information. The committee must have considered that after it had gathered further information, it might decide that the age differentials were not a bar. We do not view this action, however, as respondents seem to claim, as eliminating the age differentials from further consideration. They remained factors which were entitled to weight in the final decision.

(2) *The dispute with the natural mother.* If Lois were to remain with the Peebles, Mrs. Brown would know where she would be. As pointed out in *Adoption of Shields,* page 225, one of the purposes to be served in selecting an adoptive home is protection from interference from natural parents. Sec. 48.01 (2) (f), Stats. In addition to knowing where Lois was, Mrs. Brown disputed the claim that she had intended that Lois be adopted by the Peebles when she left her with them. Mrs. Brown attempted to regain custody by legal proceedings in 1956. Mrs. Pearson testified that Mrs. Peebles felt sure that Kenneth was the father of Lois (although Mrs. Brown testified in children's court to the contrary) and expressed hostility toward Kenneth and the problems he had presented for her and her family. Mr. Peebles testified that he didn't know for sure about the relationship between Kenneth and the child.

Since the department's refusal, Mrs. Brown has attempted to appear in this proceeding and to oppose the adoption. She has married the nephew, Kenneth.

In *Adoption of Shields* excessive age differentials plus the natural mother's knowledge of the child's location was considered sufficient to show that the refusal to consent was not arbitrary, capricious, or unfounded in fact. In the case now before us the danger of interference by the natural mother is, if anything, more imminent than in *Adoption of Shields*. In addition, if the Peebles were to adopt Lois, it appears that they would entertain at least a suspicion that she is Kenneth's child.

(3) *Mrs. Pearson's evaluations.* We do not consider it necessary to determine whether the personal evaluations, if they were the only elements unfavorable to the Peebles, would support refusal to consent. The county court made no finding of bad faith on the part of Mrs. Pearson or any member of the adoption committee and there is no evidence to support a finding of that sort. In part, Mrs. Pearson's evaluations were interpretations of what she observed in interviews with Mr. and Mrs. Peebles. As to the remainder they were conclusions she reached from facts which are not in material dispute. From the expert testimony we gather that a psychiatrist or psychologist would probably not have felt qualified to reach all the conclusions she did on the basis of the observations she made and the facts upon which she relied. Perhaps these evaluations could be given no weight except that they raised questions whether the Peebles had certain traits and attitudes but, in any event, the department's action was amply supported by the first two reasons mentioned and both of them were grounded upon undisputed facts.

The department's duty was to act in the best interests of Lois. The Peebles could provide a good home with good physical care and Lois was already accustomed to them. Viewed in terms of the present and near future those factors were highly favorable and, of course, entitled to weight, but

the child's future welfare must also be considered. When she is ten, Mrs. Peebles will be fifty-eight. When she is sixteen, Mrs. Peebles will be sixty-four. These and other considerations based on the age differentials raise problems, principally in terms of the future. There is also the danger of interference by the natural mother. Exactly what may happen or when is unpredictable, but the possibility presents a problem in terms of the future. Mrs. Pearson's evaluations at least raised questions. The department's problem was to consider the matter and make a decision in the best interests of Lois as it saw them. The county court evidently considered that Lois' best interests would be served by adoption by the Peebles. That question was not before him, for the law places the responsibility initially upon the guardian. The court cannot, as we said in *Adoption of Shields,* substitute its judgment for that of the guardian merely because it disagrees with the guardian's appraisal of the facts.

Respondents point to various acts of the department and its counsel during the course of this litigation as proof that the employees had no belief in good faith that the refusal was for Lois' best interests. We cannot agree with their interpretation. Two of the matters, however, call for comment.

Respondents were understandably disappointed at the decision to remove Lois from their home after they had been promised by a representative of the department that Lois would be left with them during the course of this litigation. We can sympathize with this disappointment, but arbitrariness at that point, even if it was such, does not prove arbitrariness on the part of the caseworker and the adoption committee in reaching the decision to refuse consent.

One can readily view this matter from the point of view of the Peebles. They have supported and cared for a child with hope that they might eventually be able to adopt. They have fought out this litigation, undoubtedly at great expense. On the face of it, the conflict is between their very natural

hopes and the decision of professional employees of a governmental agency, but it must be remembered that the prime consideration must always be the best interests of the child and that there is good reason to believe that there are other adoptive homes available which do not present the problems and difficulties for the future which are, unfortunately, present in the Peebles' home.

Another instance where respondents' counsel claims that the record shows bad faith on the part of the department consists of language quoted from the department's brief critical of counsel for the respondents and of the trial judge. This language seems to us to have no relevancy to the good faith of the adoption committee at the time it decided to refuse consent, but it does cause us concern. In reading the record we have been disturbed by numerous instances in which Mr. Rice, as counsel for the department, has used ill-advised and intemperate language addressed to or concerning opposing counsel and the trial court. We take this occasion to warn him to exercise restraint in the future and to inform him that his clients' success on this appeal is due to the facts presented and not in any measure to the fancied eloquence referred to.

Counsel for the department has urged that it was error for the county court to compel the department to produce the files containing its information concerning Lois and the Peebles application. He points out that sec. 48.78, Stats., provides that information received by various agencies, including the department, regarding individuals in their care or legal custody, shall not be open to inspection or their contents disclosed except by order of the court. He correctly asserts that under sec. 48.02 (2) the word "court" in this portion of ch. 48, Stats., means the juvenile court. Sec. 48.85, under which this proceeding was carried on, is in the portion of ch. 48, Stats., relating to adoptions, under the · jurisdiction of the county court. The present ch. 48, Stats.,

was enacted in 1955 as the Children's Code, and the two sections should be construed in the light of the common purpose. Some of the agencies referred to in sec. 48.78 may be guardians of minors. The guardian's refusal to consent is made subject to review by the county court by sec. 48.85. We conclude that in a proceeding under sec. 48.85 an order of the county court requiring disclosure and inspection of the records and information upon which an agency has based its refusal to consent is sufficient protection so that the agency cannot be considered to have violated sec. 48.78 in making disclosure for that purpose.

The alternative writ of prohibition issued in connection with the situation involved in this appeal has performed the function of a stay of proceedings while the appeal has been pending. Upon remittitur, there will be no further need for a stay, and the application for the writ of prohibition will then be dismissed and the alternative writ quashed.

*By the Court.*—The order of adoption is reversed, and the cause is remanded with directions to set aside the order waiving consent of the guardian and to deny the petition for adoption. No costs are allowed to either party.

MARTIN, C. J., and BROWN, J., took no part.