IN MATTER OF ESTATE OF BERTHA L. RUEDIGER, Deceased: GERHARD RUEDIGER, Appellant, v. SHEEDY, Personal Representative, and another, Respondents.

*No. 75–789. Submitted on briefs February 8, 1978.—*
*Decided April 5, 1978.*
(Also reported in 264 N. W. 2d 604.)

110

For the appellant the cause was submitted on the briefs of *Carr, Kulkoski & Carr* of New Berlin.

For the respondent the cause was submitted on the brief of *Brendel, Flanagan & Sendik, S.C.* of Wauwatosa.

CALLOW, J. This appeal is taken from an order in probate directing Gerhard O. Ruediger, one of the two sons of the decedent Bertha L. Ruediger, to pay the personal representative $10,114.50 together with interest. This amount represents cash which the probate court determined should be added to the original inventory of the assets of the estate. The order requiring Gerhard to pay $10,114.50 in cash resulted from an objection to the inventory filed by Gerhard's brother Manfred. Gerhard challenges both the procedure used by Manfred to make his objection to the inventory and the evidence relied on by the probate court in concluding that $10,114.50 in the possession of Gerhard is due the estate.

Three issues are presented on appeal:

I. *Has Gerhard waived his right to review by failing to appeal from an earlier order?*

II. *Did the filing of an objection to the inventory give the probate court personal jurisdiction over Gerhard with respect to his interest in the cash?*

III. *Did the probate court err in admitting as evidence of an incomplete inventory an unaccepted offer to settle the estate made by Gerhard to Manfred?*

Bertha L. Ruediger died at the age of ninety on March 15, 1973, in a nursing home in Milwaukee. She left two living sons, Gerhard O. Ruediger of Milwaukee, and Manfred Ruediger of Mystic, Connecticut. Mrs. Ruediger executed a will dated July 19, 1965, in which she named Gerhard personal representative, bequeathed several specific cash gifts to enumerated persons, and bequeathed

the residue of the estate to Gerhard and Manfred equally. Gerhard had possession of the will and knew its contents. After Mrs. Ruediger sold her Milwaukee residence in 1970, until she entered a nursing home less than one month before her death, she lived with her son Gerhard.

Although sec. 856.05(1), Stats., requires a will to be filed in court within thirty days of the testator's death, Gerhard waited seven months after his mother's death to file a petition for probate of her will. In the petition he listed the assets of the estate as $5,500 in personalty and no realty. Manfred filed an objection to the appointment of his brother Gerhard as personal representative of the estate. This objection alleged that Gerhard failed to file the will within the thirty-day period set by law, that Gerhard intended to make a claim against the estate for nursing care furnished the decedent, and that Gerhard attempted to avoid probate of the will, including the payment of estate and inheritance taxes, by means of an agreement between the two sons.

The court held a hearing on Manfred's objection to the appointment of Gerhard as personal representative. At the hearing Gerhard's counsel told the court that Bertha was afraid of banks. When she sold her home in 1970, $3,000 was deposited in the joint account, and $5,000 was invested in a certificate of deposit in the names of Bertha, Gerhard, and his wife as joint tenants with survivorship rights. In addition to this, Bertha kept cash in her room, and Gerhard kept $2,600 in cash for his mother. In 1972 the joint account was closed out and the certificate of deposit was surrendered so that Bertha could receive Title 19 Medicare. Gerhard testified that the money that went into both the savings account and the certificate of deposit was solely Bertha's money. Gerhard also testified that he now has $7,000 of his mother's money in a box in his home.

The trial court permitted Manfred to introduce into evidence a document entitled "Agreement," which was

signed and acknowledged by Gerhard on August 22, 1973, but which was never signed by his brother Manfred. This agreement recites that "in order to avoid a possible conflict, the two residuary legatees are desirous of making a compromise settlement." It recites the provisions of Bertha's will and lists the debts chargeable against the estate. It also recites that the parties have agreed to two "charges." These "charges" are not listed as bequests in the will. The agreement further recites that "the probate estate consists of cash in the sum of $13,639.80 and an account receivable from Manfred Ruediger in the sum of $1,850.00 for total assets of $15,489.80," and that the balance due the two residuary legatees when the total charges were subtracted from total probate assets was $7,891.30. In the agreement the undersigned agreed that the charges against the estate be paid, that the balance of a contract between Gerhard and the decedent for the maintenance of the decedent be paid to Gerhard in the amount of $3,864.50, and that the residue be distributed to Manfred and Gerhard in the amount of $3,945.65 each.

Manfred sought the admission of this agreement as evidence that the probate assets included cash in the amount of $13,639.80. Gerhard objected on the ground that the agreement was an unaccepted offer to compromise which was inadmissible. The trial court overruled this objection because, since the agreement was signed by Gerhard two months before he filed the will, Gerhard's "machinations in the meantime are properly before the court." Gerhard also admitted that he considered the funds Bertha deposited in the joint account and the certificate of deposit as gifts to him and his wife for which, as personal representative, he need not account.

Based on this testimony the court sustained Manfred's objection to the appointment of Gerhard as personal representative and appointed Attorney Patrick T. Sheedy, with the consent of the parties. The court stated that, although the fact that Gerhard failed to file the

will promptly and failed to put the probate assets in an interest-bearing account were factors in its decision to sustain the objection to the appointment, the principal reason was the fact that Gerhard and his wife were going to make a claim to a substantial portion of the estate, and that Gerhard should not be the judge of his own claim.

On April 1, 1974, Mr. Sheedy filed a general inventory listing the assets of the estate as $5,500 in cash, the amount of assets listed on Gerhard's original petition for probate of the will. Manfred filed an "Objection to the Inventory," alleging that the estate should include assets of $13,639.80 as admitted by Gerhard in the agreement.

At the hearing on November 18, 1974, on this objection to the inventory, Gerhard moved to dismiss the objection on the grounds that the "subject matter was not properly before the court." Despite this reference to the subject matter, Gerhard's objection is more accurately described as an objection to the court's personal jurisdiction over him. He contended that the exclusive procedure to reach uninventoried assets of the estate is contained in sec. 879.63, Stats., which requires commencement of an "action." He contended that because he was not served with a summons the court should dismiss the objection for lack of personal jurisdiction over him. The court denied the motion and proceeded to hear the merits of Manfred's objection to the inventory.

Gerhard testified that after the funeral he spoke to Manfred on the phone about the size of his mother's estate and told him that the share Manfred would get was approximately $2,100. He testified that Manfred asked for more money. As a result, Gerhard consulted his attorney to draft an agreement as a compromise settlement. Manfred did not accept this offer.

The record shows that the sale of Bertha's home in 1970 produced the cash in her estate. Gerhard testified that some of his mother's money was in his possession,

that some was in his brother's possession, and that he found some hidden in her room. Gerhard insisted that the proceeds of the joint savings account and the certificate of deposit were a gift to him, though the trial court consistently sustained all objections to evidence regarding Bertha's making a gift of her money to Gerhard and his wife on the grounds of the dead man's statute, sec. 885.15, Stats.

Based on the recitation in the agreement that the probate estate consisted of assets of $13,639.80, the court sustained Manfred's objection to the inventory and ordered the personal representative to file an amended inventory. Pursuant to this order, Mr. Sheedy filed an amended inventory listing the probate assets as $228.90 in cash received from Gerhard and $13,410.90 in cash due the estate from Gerhard.

Manfred then moved the court by order to show cause to compel Gerhard to pay Mr. Sheedy the $13,410.90 sum specified in the amended inventory. After a pretrial conference, the court reduced the amount due to approximately ten thousand dollars to reflect certain credits found to be due Gerhard and on May 14, 1975, declared that amount to be due.

Gerhard appealed from the May 14 order, but the appeal was dismissed by stipulation of the parties. The parties agreed to dismiss the appeal because they suspected that the precise language of the May 14 order, declaring a sum due without ordering the payment to be made, made the order nonappealable.

On January 20, 1976, Manfred again moved the court by order to show cause to compel Gerhard to pay over the amount due the estate. Yet another hearing was held. However, the court postponed making an order until after a forthcoming pretrial conference. The court also pointed out that any order made after the forthcoming pretrial conference compelling Gerhard to turn over a specified amount to the personal representative would

■

not constitute a conclusive determination of the owner-ship of the cash. The court stated that "the question of the ownership of that money can only be brought by [Gerhard's] filing objections to [the amended inventory] and claiming this was the money of Mr. Ruediger [Gerhard]. And then we will have the issue of whose asset this is." Therefore on February 12, 1976, the court ordered Gerhard to file on or before March 3, 1976, any objections that he may have to the amended inventory of the personal representative or to file any other plead-ing which questions the conclusion that he owes a specific amount to the estate. On February 17, 1976, after the pretrial hearing, the court ordered Gerhard to pay Mr. Sheedy $10,114.50 plus interest. Gerhard has appealed from the February 17 order.

On appeal the respondent Manfred moved to dismiss the appeal as taken from a nonappealable order. We denied this motion concluding that the order appealed from is a final order.

I. *Has Gerhard waived his right to review by failing to appeal from an earlier order?*

■

Both of the issues raised on this appeal, *i.e.,* the juris-diction of the probate court to entertain the objection to the inventory and the admissibility of the compromise offer, were properly preserved in the probate court. Nonetheless, Manfred claims that Gerhard has waived his right to a review of these issues by his failure to appeal at some earlier stage in the proceedings. On ap-peal from a final order this court lacks the power to review a prior final order in the cause. *Pick Industries, Inc. v. Gebhard-Berghammer, Inc.,* 262 Wis. 498, 501, 56 N.W.2d 97 (1952).[1] However, a nonappealable inter-

---

[1] *But Compare:* Sec. 817.34, Stats., provides "Upon an appeal from a *judgment,* . . . the supreme court may review any inter-mediate order which involves the merits and necessarily affects the judgment, appearing upon the record." (Emphasis added.)

mediate order may be reviewed upon an appeal from a final order in a special proceeding. *United States v. Burczyk,* 54 Wis.2d 67, 74, 194 N.W.2d 608 (1972); *Adoption of Brown,* 5 Wis.2d 428, 435, 92 N.W.2d 749 (1958).

Our review of the probate court's order of February 17, 1976, compelling payment by Gerhard of approximately ten thousand dollars to the personal representative also entails a review of the basis for the December 4, 1974, order to amend the inventory. For this reason Manfred argues that Gerhard should have appealed from the December 4 order and that *Estate of Dammann,* 230 Wis. 160, 283 N.W. 363 (1939) controls. In *Dammann* this court refused to permit review of a prior final order denying a motion to surcharge an executor from an appeal from a later final order allowing the executor's final account. However, *Dammann* is inapplicable where a prior order is not a final order and is not appealable in its own right.

An appealable order must finally dispose of a substantial right and preclude further steps therein. *Estate of Stoeber,* 36 Wis.2d 448, 452, 153 N.W.2d 599 (1967). The order of December 4 merely authorized the filing of an amended inventory and did not finally dispose of title to that property. In fact, further steps were taken by Manfred by means of the orders to show cause to compel Gerhard to pay over cash to the personal representative. The appeal from the first order to show cause was dismissed by stipulation of the parties only to make way for the entry of an order that was more clearly a final order. Those steps resulted in the order which gave rise to this appeal, and we have previously held it to be a final order. Thus even if the review of the February 17, 1976, order requires a review of the probate court's prior intermediate order, such review is proper.

II. *Did the filing of an objection to the inventory give the probate court personal jurisdiction over Gerhard with respect to his interest in the cash?*

Gerhard argues that Manfred's petition to the probate court, entitled "Objection to the Inventory," was the wrong procedure for bringing the issue of omissions from the inventory before the probate court. He claims that the procedure used failed to give the court personal jurisdiction over him with respect to his interest in the cash at issue. Gerhard's position is based on sec. 879.63, Stats. That statute provides for an "action" to be brought by any interested party to secure uninventoried assets of the estate:

"879.63 Action by person interested to secure property for estate. Whenever there is reason to believe that the estate of a decedent as set forth in the inventory does not include property which should be included in the estate, and the personal representative has failed to secure the property or to bring an action to secure the property, any person interested may, on behalf of the estate, bring an action in the court in which the estate is being administered to reach the property and make it a part of the estate. If the action is successful, the person interested shall be reimbursed from the estate for the reasonable expenses and attorney's fee incurred by him in the action as approved by the court but not in excess of the value of the property secured for the estate."

Gerhard does not contend that he had no actual notice of the hearing on the objection to the inventory. Rather, he contends that by setting forth this specific statutory procedure requiring the commencement of an action the legislature has made it exclusive and that because his brother failed to commence an action by service of process the probate court did not obtain personal jurisdiction to compel him to pay the disputed amount of approximately ten thousand dollars to the personal representative. Manfred counters that any action brought under sec. 879.63, Stats., is actually a "special proceed-

ing" for which a summons is unnecessary. He also contends that, even if sec. 879.63 requires an action to be commenced by service of process, that procedure is not exclusive and that a petition to the probate court under sec. 879.01, Stats., is an acceptable alternative to the commencement of an action under sec. 879.63.

Sec. 879.63, Stats., was first enacted in the new probate code. Ch. 339, Laws of 1969. No similar statute existed prior to that time. Although matters in probate are special proceedings rather than actions,[2] sec. 879.63 explicitly authorizes "an action . . . on behalf of the estate . . . in the court in which the estate is being administered to reach [uninventoried] the property and make it a part of the estate."

The *Comment* of the drafters of sec. 879.63, Stats., published along with the statute in the session law, provides evidence that sec. 879.63 constitutes an exception to the rule that matters in probate are not actions. It states that: "This section is new. It gives all persons interested rights similar to creditors under s. 859.40." 40H Wis. Stat. Ann. at 786 (1971).

Sec. 859.40, Stats., in turn, also expressly provides for the commencement of an action to reach uninventoried property of the decedent to be brought by a creditor, in behalf of all creditors "[w]henever there is reason to believe that the estate of a decedent as set forth in the inventory may be insufficient to pay his debts." *See also:* Sec. 859.41, Stats., entitled "Creditor's action for property fraudulently sold by decedent."

In *State Department of Public Welfare v. LeMere,* 19 Wis.2d 412, 415–6, 120 N.W.2d 695 (1963), this court said of the predecessors to sec. 859.40, Stats.:

[2] *Estate of Stoeber, supra* at 452; *Estate of Boerner,* 46 Wis.2d 183, 188, 174 N.W.2d 457 (1970).

"These sections provide a remedy for creditors of a deceased, whose claims have been allowed, but cannot be paid, 'to reach and subject to sale any property, not included in such inventory, which is liable for the payment of such debts.' "

*State Department of Public Welfare v. LeMere* was in itself an action in the circuit court brought under the predecessor statutes to sec. 859.40, Stats. Thus the reference to sec. 859.40 in the *Comment* to sec. 879.63, Stats., suggests that sec. 879.63 was intended to create a remedy for the personal representative and interested parties analogous to that provided for creditors in sec. 859.40, Stats., and that this remedy is to be pursued by commencing an action.

In *State ex rel. Ashley v. Circuit Court for Milwaukee County*, 219 Wis. 38, 261 N.W. 737 (1935), this court distinguished between actions and special proceedings as follows:

"By statute, sec. 260.02, remedies are divided into (1) actions and (2) special proceedings. An action is an ordinary proceeding in a court of justice by which a party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense (sec. 260.03). Every other remedy is a special proceeding (sec. 260.04)." 219 Wis. at 43.

A proceeding brought under sec. 879.63, Stats., by analogy to secs. 859.40 and 859.41, Stats., is brought by a specific interested party in behalf of the estate against another specific party to protect or enforce a substantive right of the estate and therefore fits the definition of action in *State ex rel. Ashley*. A typical proceeding under sec. 879.63 would be brought on a theory of conversion or fraud, theories that ordinarily give rise to an action. Moreover, since an action authorized by sec.

879.63 may often be brought against uninterested parties, service of process may be appropriate because uninterested parties would not otherwise have had notice of the probate proceedings. Therefore we conclude that, when the legislature used the term "action" in sec. 879.63, Stats., it meant precisely that.

But the probate court also has the power to adjudicate in a special proceeding title to property in the hands of any person whenever the controversy is incidental and necessary to the administration of the estate. *Estate of Corey,* 73 Wis.2d 644, 648, 245 N.W.2d 902 (1976) ; *see also:* sec. 253.10(2) (a), Stats. In *Corey* an interested party filed an objection to the inventory on the ground that it included an item of personal property that he claimed had been given to him by the decedent as an inter vivos gift. After a hearing on the objection, the probate court directed the personal representative to serve a complaint on the interested party to recover the property for the estate. This court approved of the use of such an action to adjudicate title to the disputed item of the inventory but emphasized that since the probate court had the subject matter jurisdiction to decide incidental questions of title "other procedures could have been adopted." *Id.* at 650.

Gerhard contends, however, that because the legislature has enacted a statutory procedure for vindicating a right, this procedure must be exclusive. Ordinarily, an aggrieved party must resort to a statutory remedy which was designed to redress a particular injury rather than to common law remedies. *See, e.g., Kultgen v. Mueller,* 3 Wis.2d 346, 350, 88 N.W.2d 687 (1958) (aggrieved party may not sue in equity to set aside a condemnation award where statute provides a procedure for appealing the award) ; *Industrial Credit Co. v. Inland G. M. Diesel, Inc.,* 51 Wis.2d 520, 527, 187 N.W.2d 157 (1971) (ag-

grieved lienholder could not sue for unjust enrichment, but is limited to his rights under statutory lien law). However, a statutory remedy may not be considered exclusive when the statutes themselves supply alternatives.

■ The probate code authorizes applications to the probate court by means of petitions. Sec. 879.01, Stats. Though the code does not expressly provide for an objection to an inventory, a review of the case law shows that an objection to the inventory has been a frequently used petition to challenge a particular item included in an inventory. *See, e.g., Estate of Corey, supra; Estate of Schreiber,* 68 Wis.2d 135, 227 N.W.2d 917 (1975) (objection filed to challenge the inclusion of a partnership interest in the inventory). *Compare: Estate of Gibson,* 7 Wis.2d 506, 96 N.W.2d 859 (1959) ; *Estate of Bean,* 261 Wis. 26, 51 N.W.2d 555 (1952) ; *Estate of Nols,* 251 Wis. 90, 28 N.W.2d 360 (1947), cases in which the objection to an item in the inventory was made by means of a motion to strike the item from the inventory. If an objection is an appropriate way to challenge an inclusion in an inventory, we conclude that it is also an appropriate way to challenge an omission from the inventory.

The probate code also provides other procedures for challenging an omission from an inventory. Under sec. 858.09, Stats., the probate court, at the request of any person interested in the estate or the property listed in an inventory, or on its own motion, may examine the personal representative on oath in relation to a proposed addition or deletion from the inventory. *See, e.g., Estate of Budney,* 2 Wis.2d 389, 86 N.W.2d 416 (1957), where an interested party examined the personal representative concerning the ownership of property discovered at the residence of the deceased. Under sec. 869.13, Stats., any person interested may file an objection to any item or omission in an account by a personal representative, including his accounting of the decedent's property.

Sec. 879.61, Stats., expressly permits an interested party to accomplish by a petition what Manfred intended to accomplish by filing his objection to the inventory. Under sec. 879.61 any interested person "who suspects that any other person has concealed, stolen, conveyed or disposed of property of the estate, . . . may file a petition in the probate court so stating, and the court upon such notice as it directs, may order the other person to appear before the court . . . for disclosure, . . . and may make any order in relation to the matter as is just and proper." This discovery process is an alternative to commencing an action under sec. 879.63, Stats., to secure uninventoried assets of the estate.

Although Manfred's petition was labeled an "Objection to the Inventory" and although its language recalls the language of sec. 879.63 rather than sec. 879.61, these are merely defects of form.[3] Manfred's objection is in substance a petition to discover concealed assets of the estate. Indeed the only witness at the hearings on this objection was Gerhard whose testimony disclosed the possible existence of other assets of the estate. In concluding, based on the evidence contained in the agreement that Gerhard should be required to pay over $10,114.50 in cash to the personal representative to be included in the inventory, and by inviting Gerhard to bring an objection to determine conclusively whether the cash was a gift from the deceased, the probate court made an order that it deemed "just and proper," as authorized by sec. 879.61, Stats. Thus Manfred's objection to the inventory need not have been brought as an action. The probate code contains other alternatives, the procedural requirements of which have been complied with here. Manfred's compliance with the notice requirements of the probate

---

[3] Sec. 879.01, Stats., states: "No defect of form or substance in any petition shall invalidate any proceedings."

code was sufficient to bring the matter properly before probate court and to give the court personal jurisdiction over Gerhard to adjudicate title to the money.

III. *Did the probate court err in admitting as evidence of an incomplete inventory an unaccepted offer to settle the estate made by Gerhard to Manfred?*

The rule that an unaccepted offer of compromise is not admissible as an admission against interest on the issue of liability is accepted by both parties. *See: Connor v. Michigan Wisconsin Pipe Line Co.,* 15 Wis.2d 614, 113 N.W.2d 121 (1962) ; *State Medical Society of Wisconsin v. Associated Hospital Service, Inc.,* 23 Wis.2d 482, 128 N.W.2d 43 (1964) ; *Gallagher v. Industrial Commission,* 9 Wis.2d 361, 101 N.W.2d 72 (1960) ; *Papke v. Haerle,* 189 Wis. 156, 207 N.W. 261 (1926). The rule creates a privilege based on the public policy of encouraging settlements. *Connor v. Michigan Wisconsin Pipe Line Co., supra* at 619–20. It recognizes that a person ought to be able to buy his peace without fear that his offers of compromise will be used against him if not accepted. *State Medical Society of Wisconsin v. Associated Hospital Service, Inc., supra* at 492.

This offer was made in August, 1973, four months after the statutory time for filing the will and two months before it was filed in the probate court. Gerhard denied that he ever intended the agreement to substitute for probate of the will. However, the trial court found: "This looks to me like there was an attempt to probably divide this estate by informal or (sic) administration, if you want to call it that; an agreement between the parties, which agreement was not agreed to by Manfred." Although public policy favors efforts to settle litigation extrajudicially, public policy strongly disfavors efforts to

administer estates extrajudicially[4] or to compromise claims unless so authorized by the probate court. Sec. 879.59, Stats., gives the probate court authority to authorize a compromise and requires court approval of the compromise. We cannot find that the efforts to compromise claims under a will which has not yet been admitted to probate and before a personal representative has been appointed to preserve and inventory the probate assets is an effort to compromise for which the evidentiary privilege should apply.

Furthermore, even if the agreement is accorded the privilege given to offers of compromise, the probate court did not abuse its discretion in admitting the agreement as evidence of the possible existence of other assets of the decedent. At the time the probate court made its ruling, the rule excluding from evidence offers of compromise distinguished between admissions made for the purpose of compromise and admissions of independent facts occurring during compromise negotiations. *Papke v. Haerle, supra; Connor v. Michigan Wisconsin Pipe Line Co., supra.*

Sec. 904.08, Stats., which has since been adopted, abolishes the general rule that admissions of independent facts occurring during negotiations are admissible:

"Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. *Evidence of conduct or statements made in compromise negotiations is likewise not admissible.* This section does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, proving

---

[4] Chapter 865 provides an informal administration without exercise of continuous supervision by the court, but it also includes many safeguards to prevent abuse. Chapter 865, Stats.

accord and satisfaction, novation or release, or proving an effort to compromise or obstruct a criminal investigation or prosecution." (Emphasis added.)

Under sec. 904.08 admissions of independent fact are inadmissible unless admitted for the limited purposes described in the third sentence of the rule.[5]

The probate court found:

"But there's no doubt about it. [The agreement is] signed by Gerhard. It states that the deceased's probate estate consists of total assets of $15,489.80.

". . .

"There has been no showing that the statement in Exhibit 1 is in error.

"There has been no showing as to how the sum of $13,639.80, referred to as cash in [the agreement] was arrived at. It's a bold statement that that was the amount of cash in her estate at the time of her death, plus the account receivable from Manfred."

The court thus concluded that the statement concerning the existence of $13,369.80 in probate assets was an admission of independent fact. Moreover, the court did not consider the admission to be conclusive. It left to the personal representative the determination of the amount of money to be inventoried. It explicitly stated that it did not consider the admission of the agreement to preclude Gerhard from proving that the cash referred to in the agreement as probate assets was in fact an inter vivos gift. If Mrs. Ruediger did receive Title 19 Medicare assistance, she would have been required to divest herself of assets greater than $1,750, sec. 49.47 (4) (b), Stats., 1973, and might have given away some of the proceeds from the sale of the house as gifts.

For all of these reasons, we do not find that the probate court abused its discretion in admitting the agree-

[5] *See:* Judicial Council Committee's Note, 59 Wis.2d at R91 (1973).

ment drafted by Gerhard and tendered to Manfred for the limited purpose of proving the existence of additional assets to be inventoried.

*By the Court.*—Order affirmed.