**COURT OF APPEALS
DECISION
DATED AND FILED**

**December 19, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1786**

Cir. Ct. No. **2021TP50**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

IN RE THE TERMINATION OF PARENTAL RIGHTS TO H. L. C. IV, A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

　　　　PETITIONER-RESPONDENT,

　V.

S. H.,

　　　　RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Affirmed*.

¶1    WHITE, J.[1]  S.H. appeals the order terminating her parental rights to her son H.C.  S.H. argues that the circuit court failed to consider the age of her son's foster parent as a factor when it determined that termination was in her son's best interests.  She contends that the foster parent, who is her son's proposed adoptive resource, may be rejected to adopt him due to her age.  Upon review, we affirm.

**BACKGROUND**

¶2    In February 2021, the State filed the petition for the termination of parental rights (TPR) of H.C., born in February 2018, against S.H.[2]  The State alleged three grounds for the TPR:  that S.H. abandoned H.C. for a minimum of three months as defined in WIS. STAT. § 48.415(1)(a)2.; that H.C. was a child in continuing need of protection of services (continuing CHIPS) pursuant to Sec. 48.415(2); and that S.H. failed to assume parental responsibility for H.C. as described in Sec. 48.415(6).

¶3    The State alleged that the Division of Milwaukee Child Protective Services (DMCPS) removed H.C. from his parents' care at five months old, in July 2018, because he was severely underweight and malnourished.  After he was detained, S.H. refused to provide consents for H.C. to receive Birth-To-Three services or to be seen by a cardiologist for a heart condition.  S.H. has not maintained regular visitation with H.C., with no visits from June 27, 2019, through

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2]  The State also successfully petitioned to terminate the parental rights of C.H.'s father; his case is not before us and we discuss it only to the extent necessary to review this matter.

January 15, 2020; from January 26, 2020, through May 18, 2020; from July 26, 2020, through November 1, 2020; and November 8, 2020 through February 23, 2021. S.H. refused to participate in psychological evaluations or a competency assessment.

¶4 S.H. decided to enter a no-contest plea to the abandonment ground on January 18, 2022. After a thorough colloquy, the circuit court accepted her plea. The State then provided testimony to prove the ground. The case manager testified about the time periods, as alleged in the petition, during which S.H. had no contact with H.C. without any explanation. S.H. did not maintain contact with the child's caregiver or the case manager during these time periods. Because S.H. was not responsive to providing consents for medical care, DMCPS resorted to seeking a temporary guardianship over H.C. The court found that the State proved the abandonment ground and found S.H. an unfit parent pursuant to WIS. STAT. § 48.424(4).

¶5 The court held the dispositional hearing on May 30, 2023. The State called the case manager, who testified that H.C., now five years old, has had three placements since his removal at five months old. He was placed with his paternal grandmother from removal in July 2018 until June 2022; however, he was removed due to the grandmother's criminal charges for driving under the influence and having a weapon. After about six months in a second placement, he was moved to his current placement and adoptive resource, B.W., in January 2023. The case manager explained that while placing H.C. with B.W., the agency made inquiries to determine that B.W. was financially and emotionally able to provide for H.C. until age eighteen or beyond.

¶6    The State called B.W., H.C.'s foster mother. She testified that she would love to adopt H.C. and she was working on her licensing to adopt. She testified she did not have ongoing health concerns and she did not believe there was anything preventing her from being licensed to adopt, although she was still submitting her medical records. She testified that she did not have concerns about her ability to provide for H.C. until he is eighteen and beyond, if needed. B.W. testified that she was sixty-four years old. She stated that H.C. had some problems with bed wetting and aggressive behavior, but the issues had mostly resolved. B.W. explained that H.C. acted out after visits with S.H. and he had corresponding misconduct in school.

¶7    S.H. testified on her own behalf. She testified that she was working with the social workers and counselors to better herself as a parent. She acknowledged that the domestic violence incidents against her by H.C.'s father in April and May 2023 were not in H.C.'s best interests but that she had a restraining order against H.C.'s father now. Upon questioning by the circuit court, S.H. expressed that she wished H.C. was placed with her or with family, and she blamed his aggressive behavior on the foster care system.

¶8    The court issued an oral ruling. The court found "that the factors weigh heavily in favor of termination of parental rights" because "permanency is not a foster care placement." The court stated that "[p]ermanency is not waiting around until the parents get their act together."

¶9 The court considered the factors under WIS. STAT. § 48.526(3).[3] The court found there was a "strong likelihood of adoption" by B.W. B.W. was committed to adopting H.C. and if she does not, "the child is five years old" and he is "adoptable" even if B.W. is not the one to do it. "There is nothing so outrageous about his behavior that someone is not out there to love and care for him for the rest of his life."

¶10 The court continued, stating that H.C. had some medical and behavioral issues, but they have been remedied through care. The court did not consider H.C.'s health or behavior to be a barrier to adoption. The child was removed at five months old, he is now five years old, and he has remained out of

---

[3] In determining the disposition of a TPR petition, the circuit court must consider, but is not limited to, the following six factors:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

WIS. STAT. § 48.426(3).

his parents' care since removal. The court considered that time span to be a significant amount of time.

¶11    The court considered that H.C. knows who S.H. is, but her attention has been recent. She has been inconsistent in her visitation and for significant periods of time, she did not see H.C. or engage with DMCPS. He has not had an overnight with S.H. since removal and he has never had unsupervised visitation with S.H. As a result, the court stated that S.H. has not built a relationship with her son. The court found that H.C. does not have a substantial relationship with either parent. The court stated that H.C. referred to his paternal grandmother as his mother, but even if that was his closest biological relationship, it has dwindled since he was removed from her care. The court found that H.C.'s relationship with his younger sister was brief and not substantial. Because the court found there were not substantial relationships, it found it would not be harmful to the child to sever those legal relationships.

¶12    The court considered that H.C. had been in out of home care for the majority of his life, with a duration of separation of fifty-seven months. The court concluded that H.C. was too young to express his wishes about adoption. For the final factor, the court addressed that H.C. has been in three placements, but those placement changes were not and should not be considered his fault. The court found that he would be able to enter into a more stable and permanent family relationship if the TPR were granted. "He has had enough placements and his parents didn't complete the conditions necessary to have him safely returned to their care[.]" Without the TPR, the court considered that H.C. would "languish in foster care." The court stated that it cannot "hold it against children to act out in school or urinate in their beds … they are not throwaways." The court stated that the children "deserve our best efforts … and most particularly the parents have to

6

do what is in their best interests." The court concluded that termination was in H.C.'s best interests and granted the TPR petition.

¶13 S.H. now appeals.

## DISCUSSION

¶14 S.H. argues that the circuit court failed to consider the effect of the adoptive resource's age in the court's considerations of the first factor, the likelihood of adoption, and the sixth factor, whether the child will be able to enter into a more stable and permanent family relationship. S.H. argues that B.W.'s age, sixty-four, was relevant to whether she would be ultimately approved to adopt H.C.

¶15 Termination of parental rights is governed by the Wisconsin Children's Code, chapter 48 of the Wisconsin Statutes. If grounds for the TPR petition are found and the court determines the parent is unfit, the circuit court decides whether the evidence warrants the termination of parental rights. *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶¶22-23, 246 Wis. 2d 1, 629 N.W.2d 768. The circuit court exercises discretion to determine whether termination is in the best interests of the child, the prevailing factor in the disposition. *Sheboygan Cnty. v. Julie A.B.*, 2002 WI 95, ¶¶24, 42, 255 Wis. 2d 170, 648 N.W.2d 402.

¶16 We will sustain a circuit court's discretionary decision unless the court erroneously exercised its discretion. WIS. STAT. § 805.17(2). "A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach." *Dane Cnty. DHS v. Mable K.*, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198.

¶17 During the dispositional phase, the circuit court must make a record that "reflect[s] adequate consideration of and weight to each factor" in WIS. STAT. § 48.426(3). *State v Margaret H.,* 2000 WI 42, ¶35, 234 Wis. 2d 606, 610 N.W.2d 475. S.H. does not dispute that the circuit court addressed each factor on the record. However, S.H. argues that B.W.'s age was also relevant and the circuit court failed to consider its effect. S.H. argues it is a "practical reality" that B.W.'s age "naturally informs" the first factors, the likelihood of adoption under WIS. STAT. § 48.426(3)(a) and the sixth factor, H.C.'s stability and permanence if the TPR were granted under Sec. 48.426(3)(f). These argument fail.

¶18 Turning to the first factor on the likelihood of adoption, the circuit court considers whether the child is adoptable.[4] S.H. asserts that due to B.W.'s age, her likelihood of being approved as an adoptive parent is low. S.H. acknowledges that the qualifications of who may adopt, under WIS. STAT. § 48.82, do not limit potential adoptive parents by a maximum age. However, she points to multiple decisions in which the appellate court considered age a relevant factor in the considerations of the best interests of the child in a prospective adoption. *See Young v. Alderson*, 68 Wis. 2d 64, 227 N.W.2d 634 (1975) ("*Randolph*"); *Shehow v. Plier*, 60 Wis. 2d 540, 210 N.W.2d 865 (1973) ("*Tachick*"); *Peebles v. Milwaukee Cnty. Dept. of Pub. Welfare*, 5 Wis. 2d 428, 92 N.W.2d 749 (1958) ("*Brown*"); *Westphal v. State Dept. of Pub. Welfare*, 4 Wis. 2d 219, 89 N.W.2d 827 (1958) ("*Shields*").

---

[4] However, even if an agency or government department would deem a child not adoptable, that is merely a fact relevant to the consideration. The court need not find all six factors to weigh in favor of termination to grant the TPR. *See State v. Margaret H.*, 2000 WI 42, ¶35, 234 Wis. 2d 606, 610 N.W.2d 475 ("While it is within the province of the circuit court to determine where the best interests of the child lie, the record should reflect adequate consideration of and weight to each factor.").

¶19     We conclude that S.H.'s reliance on these cases is misplaced. First, although adoption and termination both require the court to consider the best interests of the child, these considerations must be relevant to the question of law.[5] The court's consideration of H.C.'s likelihood of adoption focuses on the child's characteristics and adoptability, not on whether a proposed adoptive resource is going to be approved in later proceedings. The court had a TPR petition before it. It did not have an adoption petition to consider. The record reflects that the court considered H.C. adoptable. The court expressly held that H.C. was adoptable even if B.W. were not the person to adopt him. Therefore, we conclude that the circuit court did not err when it did not consider the effect of B.W.'s age in its analysis of this factor.

¶20     Second, the cases themselves show that even in adoption cases, age alone is not determinative. As the *Tachick* court concluded, "[t]he age and health of the adoptive parents are factors to be considered in the best interests of the child; but, like other factors, are not determinative and carry more or less weight depending upon their relationship to other facts. *Id.*, 60 Wis. 2d at 549. In *Tachick*, grandparents were denied adoption of their grandson and our supreme court reversed, concluding that while the grandparents' ages weighed against the adoption, their ages were offset by their "natural love and affection" for the child and their inclination "to raise this child in his interests." *Id.* at 560.

---

[5] We note that the best interests of the child are referenced within multiple chapters in the Wisconsin Statutes including child custody and placement, guardianships, certain mental health treatments, and certain juvenile justice actions. *See e.g.* WIS. STAT. § 767.41(5); WIS. STAT. § 767.511; WIS. STAT. § 54.15; WIS. STAT. § 51.14; WIS. STAT. ch. 938. The court's considerations are guided by the statutes and the facts of the case.

¶21     It is true that in *Randolph*, *Shields*, and *Brown*, our supreme court upheld denial of adoption petitions by older prospective adoptive parents; nevertheless, that analysis was fact-dependent. In *Randolph*, expert testimony on separation trauma weighed more heavily against the adoptive parents than their age, finances, or discipline. In *Shields* and *Brown*, our supreme court concluded that the circuit court in each case erred when it waived the guardian's consent to the adoption because the guardian's refusal was not arbitrary or capricious. *Shields*, 4 Wis. 2d at 227, *Brown*, 5 Wis. 2d at 439. The guardian's refusal in each case was based on more than an excessive age differential between the child and adoptive parents, but was also on the concern that the biological mother would have knowledge the child's placement and potentially interfere with the adoption. *Id.* at 438-39; *Shields*, 4 Wis. 2d at 226-27. Therefore, we conclude that even if we considered the adoption case law to be relevant to the issues in this TPR, a prolonged age differential is not dispositive to the matter.

¶22     Turning to the sixth factor on whether H.C. would be able to enter into a more permanent and stable family relationship if the TPR were granted, taking into account his past placements, the record reflects that the circuit court heavily weighed permanence for H.C. The court considered that H.C. had been in several placements already and he deserved not to be treated as a "throwaway[]." The court considered that S.H. had not completed the conditions to return H.C. to her care in almost five years and she appeared to ask the court to make H.C. wait for her to get her life in order. The court's concern was H.C. languishing in foster care. The circuit court's analysis of this factor demonstrated rational decision-making.

¶23     S.H. contends B.W.'s age reasonably warrants a concern about whether B.W. can provide the permanence the court valued. She argues that that

B.W.'s age should have been taken into account as a factor because she would have thirteen more years to raise H.C. to adulthood, which would make her approximately seventy-seven years old. S.H. also argues that B.W's single status meant there would not be familial continuity if B.W. were to die. We do not take lightly the risk of additional trauma for young H.C. if something were to happen to an adoptive parent in his later childhood. Nevertheless, this argument asks for a guarantee of risk avoidance no court can offer. As the *Tachick* court reflected:

> It is also argued because of the age of the adoptive parents, they would presumably die while the child is still young and this would cause a trauma. Death always is a trauma to the people who loved and cared for the deceased. The effect of such trauma depends upon the physical and mental makeup of the person in his relationship to the deceased. Death is inevitable and we have no assurance that if the child were to be adopted by younger people that they would live to a ripe old age.

*Id.*, 60 Wis. 2d at 540. Ultimately, we conclude that the circuit court did not err when it did not take into account the effect of B.W.'s age in its consideration of the sixth factor.

¶24    S.H. argues there is insufficient evidence in the record to answer questions surrounding B.W.'s age and her health. Further, S.H. argues that the record is silent about B.W's financial stability, her income potential, and her sources to support H.C. We reject these arguments for two reasons. First, evidence of B.W.'s health or financial position are not relevant to the considerations before the court in the TPR petition. Second, B.W. testified that she did not have medical concerns, she was financially stable, and she was able to care for H.C. S.H. did not contradict this testimony and raises this issue for the first time in this appeal. "We usually do not consider issues raised for the first

time on appeal." ***Brown Cnty. Hum. Servs. v. B.P.***, 2019 WI App 18, ¶28, 386 Wis. 2d 557, 927 N.W.2d 560. We decline to address this further.

## CONCLUSION

¶25 Our examination of the record supports that the circuit court considered the relevant facts, testimony and evidence in the record and applied those facts to the proper standard of law. We conclude that the circuit court's conclusion that termination was in H.C.'s best interests demonstrated rational decision-making. We conclude that the circuit court's properly exercised its discretion. *See **Mable K.***, 346 Wis. 2d 396, ¶39.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.